(36 Misc. Rep. 415.)

        SOUTHGATE et al. v. CONTINENTAL TRUST CO. et al.

        (Supreme Court, Special Term, New York County. December, 1901.)

1. TRUSTS—CREATION—SUBSTITUTION—ADDITION.
        Where a testator created a trust by a first codicil for the benefit of a woman with whom he was living, and two months thereafter created another trust by a second codicil for the benefit of the woman and any child that might be born of their intimacy, the second trust should be regarded as an addition to, and not in substitution for, the first trust, there being nothing in the second codicil tending to show an intended revocation of the first.

2. SAME—TRUST FUNDS—INVESTMENT—INTEREST.
        Where personalty devised in trust had been loaned by testator in a foreign country to remainder-men after the termination of the trust, for a term unexpired, at a rate of interest greater than that allowable in New York, the trustee is entitled as against such remainder-men to interest on the unpaid trust res from the date of the testator's death at the contract rate, but on so much thereof as had been repaid by such

remainder-men the trustee was entitled only to such interest as it had earned.

3. EXECUTORS AND ADMINISTRATORS—LEGACY—DEATH OF LEGATEE—LAPSE OF LEGACY.

Where a will declared that a legatee for life should not take if he died before division, and from the language of the will and codicils it appeared that the testator believed that division could not be had for some time after his death, the legatee's administratrix is not entitled to such income as accrued on his share after the death of the testator and before the legatee's death, he having died before division.

4. SAME—DEBT DUE ESTATE—ASSUMPTION—VOLUNTARY PAYMENT BY STRANGER.

Where remainder-men assumed a loan due the estate, and did not accept an offer to form a corporation to take over the business and the loan, they remain liable to the estate therefor, notwithstanding they subsequently sold the business to strangers, who formed the corporation which voluntarily made partial payments on the loan.

Action by Henry Southgate, as trustee, etc., and others, against the Continental Trust Company and others, for the construction of the will of Charles L. R. Hutchinson, deceased.   Decree rendered.

Wells & Snedeker, for plaintiffs.
Jay & Candler, for defendant Continental Trust Co.
Menken Bros., for defendant Henry Southgate, as trustee, etc.
Sherman Evarts, for defendant Harriet Whitmore.
David Murray, for defendant Theodicia E. Carmen.

SCOTT, J.   Charles L. R. Hutchinson died on September 28, 1890, leaving a will and two codicils, which have been duly admitted to probate.   Administrators with the will annexed were appointed, who so far administered his estate as to pay all his debts, and dispose of all his estate except a certain contract or claim against parties residing in France for the sum of 629,200 francs.   Thereupon an order was made by the surrogate, upon consent of all parties in interest, directing said administrators to assign such contract or claim to the defendant the Continental Trust Company, in trust to hold the same and to pay over to the defendant Henry Southgate, trustee for Harriet A. Whitmore, whatever may be received or collected thereon, either principal or interest, until the full amount of the trust fund directed to be paid to him by the terms of said will, as such amount may hereafter be determined, shall have been received by him, and then to assign said debt, or whatever balance may remain unpaid thereon, to the persons entitled thereto under the said will of C. L. R. Hutchinson, deceased.   The administrators, having made the assignment thus directed, were duly discharged.

The first question which presents itself is as to how much is to be paid to Henry Southgate, as trustee for Harriet A. Whitmore. The testator's will, which was dated December 10, 1884, gave all his estate in trust to his brother, Alcander Hutchinson, who was appointed sole executor.   It provided that there should be set apart three separate funds, each capable of producing at the time of such separation an annual income of $500, which was to be paid, respectively, for their lives, to Harriet H. Southgate, Leah Knapp, and one Eugenie, whose last name is not given.   The remainder of the es-

tate was directed to be divided into three parts,—one to be held in trust for Hiram Hutchinson, during his life; one to be so held for Sarah Elizabeth Southgate, for her life; and the third to go to Alcander Hutchinson absolutely. Other provisions of the will will be referred to in discussing the questions suggested by them. On September 13, 1887, the testator executed a codicil, the material provisions of which are as follows:

"First. If my friend Harriet A. Hume shall be living at my decease, I give and bequeath to my nephew Henry Southgate the sum of twenty thousand dollars, in trust to invest and reinvest the same, collect the income thereof, and to pay the net annual income in equal quarterly payments to her, the said Harriet A. Hume, during her life; * * * and I further direct that the said sum of twenty thousand dollars be taken, to be held by the said Henry Southgate as aforesaid, out of my estate, before and in preference to any division or distribution thereof in my said will directed.

"Second. And upon the death of the said Harriet A. Hume after my decease said trust in respect to the said sum of twenty thousand dollars shall cease and determine; and I do hereby direct and declare that said sum of twenty thousand dollars shall thereupon be and become a part of the rest and residue of my estate, and be disposed of as in my will and this codicil directed in respect to such residue."

The third clause of the codicil revoked the provision made in the will for the benefit of the person named Eugenie, whose last name is not given. Two months later, on November 19, 1887, the testator executed another codicil, by which he ratifies and confirms his will, except as changed, modified, or qualified by said codicil, but makes no reference to the former codicil executed by him. The first clause and part of the second clause of this codicil are in precisely the same language as the first and second clauses of the earlier one, except that in place of the sum of $20,000 there is written the sum of $50,000. The second clause, which provides that upon the death of Harriet A. Hume the sum held in trust for her shall fall into the residuary estate, also contains in the second codicil the following proviso:

"Provided, however, that, should there be a child of the said Harriet A. Hume born after my decease of which I am or may be the father or the reputative father, and which, by reason of my relations with her existing at the time of my decease, would by legal imputation be a posthumous child of mine, although illegitimate, it is my will, and I hereby direct, that in lieu of my said trustee, Henry Southgate, turning over said fund of fifty thousand dollars, as above provided, upon the death of said Harriet A. Hume, that then and in that case he do further retain, have, and hold said sum of fifty thousand dollars during the minority of said posthumous child of mine, and apply the net income thereof to and for the support, maintenance, and education of such child, and upon such child arriving at the age of twenty-one years then to pay over to him or her the whole of said sum of fifty thousand dollars and all accumulations, and, should such child die before reaching twenty-one years, then the forepart of this second clause shall be operative."

The third clause of this codicil revokes all the provisions of the will for the benefit of Leah Knapp and Eugenie in the same language used in the earlier codicil in revoking the provisions in favor of Eugenie, with the addition and insertion only of apt words to extend the revocation to the provisions in favor of Leah Knapp, as well as to those in favor of Eugenie. The question which arises

under these two codicils, and which has been elaborately argued, is whether the two legacies given to Henry Southgate, as trustee for Harriet A. Hume (now Harriet A. Whitmore), are cumulative, entitling him to receive $70,000 from the estate, or whether the legacy given by the second codicil is to be construed as intended merely as a substitute for the smaller legacy given by the first, entitling him to receive only $50,000. The question when a legacy given by a codicil is to be deemed cumulative, or merely substitutional for one given by the will or a former codicil, has arisen not infrequently in England, and occasionally, but somewhat less frequently, in this country. In De Witt v. Yates, 10 Johns. 156, 6 Am. Dec. 326, Chief Justice Kent laid down the rule as follows:

"The general rule on this subject, from a review of the numerous cases, appears evidently to be that, where the sum is repeated in the same writing, the legatee can take only one of the sums bequeathed. The latter sum is held to be a substitution, and they are not taken cumulatively, unless there be some evident intention that they should be so considered; and it lies with the legatee to show that intention and rebut the contrary presumption. But where the two bequests are in different instruments, as by will in the one case and by a codicil in the other, the presumption is in favor of the legatee, and the burden of contesting that presumption is cast upon the executor. The presumption either way, whether against the cumulation, because the legacy is repeated in the same instrument, or whether in favor of it, because the legacy is by different instruments, is liable to be controlled and repelled by internal evidence and the circumstances of the case."

The rule thus enunciated is fortified by the citation of a large number of cases from the English reports, as well as by references to commentators upon the civil law. The case under consideration by the chief justice was that of a double legacy given in the same instrument, which he accordingly held to be noncumulative. So much of his opinion, therefore, as prescribed when and under what circumstances such a legacy would be presumed to have been intended to be cumulative, was in a sense obiter dictum, but it is amply supported by the authorities cited by him. It was said in Hooley v. Hatton, reported in a footnote to Ridges v. Morrison, 1 Brown, Ch. 389:

"Where the same quantity has been given, and the same cause or no additional reason assigned for the repetition of the gift, the court has inferred the testator's intention to be the same, and rejected the accumulation; but when the same quantity is given, with any additional cause assigned for it, or any implication to show that the testator meant that the same thing prima facie should accumulate, the court has decided in favor of the accumulation."

⚬ Referring to this case, Lord Chancellor Thurlow said in Ridges v. Morrison, supra:

"The rule there laid down seems to be this: that when a testator gives a legacy by a codicil as well as by a will, whether it be more, less, or equal, to the same person, who is a legatee in the will, speaking simpliciter, it is an accumulation, and it is incumbent upon the executor to produce evidence to the contrary if he contests such accumulation."

The presumption in favor of or against the accumulation of legacies arising from the circumstance that they are given in the same or different instruments is by no means conclusive, and may be strengthened or rebutted by internal evidence contained in the will itself, or by the circumstances under which the legacies are given.

It has been deemed to be a circumstance favoring the implication of intended cumulation that the legacies differ in amount, and it has been likewise held to be strongly indicative of such an intention that a new. or additional reason for making a bequest has accompanied the second legacy. The second codicil under consideration does not in terms revoke, or, indeed, refer in any way to, the first codicil. The circumstances surrounding the execution of the codicils are not such as to rebut the presumption of intended cumulation arising from the fact that the two legacies are given by different instruments. It appears clearly from the peculiar provisions of the second codicil that the relations between the testator and Harriet A. Hume, while unconventional, were extremely intimate, and something quite different from those which are often found to arise from meretricious alliances. No claim is made that they were married, but it was admitted on the trial that they lived together continuously up to the time of the making of the second codicil; that he addressed letters to her as Mrs. C. L. R. Hutchinson; that his nephews addressed her with the title of aunt, and addressed letters to her as Mrs. C. L. R. Hutchinson. The codicils themselves show the high regard in which the testator held her, and the second codicil contains a very suggestive reason why the testator should have desired to increase the provision he had made for her in the first codicil. The first legacy was given solely for her benefit; the second not only for her benefit, but also for the benefit of the child of their union, if such should be born. The fact that, if the legacies are upheld, it will result in the creation of two trusts, is not, in this case, controlling. It has been held in other cases to indicate an intention to substitute one legacy for another, but in each case in which it has been so held the trusts have been given to different trustees, or at least a second trustee has been added to the one to whom the first legacy was given. Benyon v. Benyon, 17 Ves. 34; Wainwright v. Tuckerman, 120 Mass. 232. In short, I find nothing within the lines of the codicil itself, or in the surrounding circumstances, to weaken or rebut the presumption of intended cumulation arising from the fact that the two legacies were given by different instruments, without the use of any words in the second codicil indicating an intention to revoke the first. The trustee for Harriet A. Whitmore must therefore be held to be entitled to receive from the estate the sum of the two legacies

The next question to be considered is as to the amount of interest which should be credited to the trustee for Harriet A. Whitmore upon the amounts bequeathed to him. At the time of the testator's death, the bulk of his estate, and, indeed, all that now remains of it, was loaned to the firm of A. Hutchinson & Co., of Paris, France, under a contract between the testator and the children of his deceased brother. This is the same contract which is now held by the defendant trust company. By its terms the loan was to bear and pay interest at the rate of 8 per cent. per annum, and it is only by enforcing a repayment of this loan that anything has been or can hereafter be paid to the trustee for Harriet A. Whitmore. It seems to be clear, under the authorities in this state, that such trustee was entitled not

only to receive interest upon the funds bequeathed to him in trust from the date of the testator's death, but to receive that interest at the rate upon which the funds were invested when the testator died. In re Stanfield, 135 N. Y. 292, 31 N. E. 1013; In re Baker, 57 App. Div. 44, 68 N. Y. Supp. 44; In re Slocum, 60 App. Div. 441, 69 N. Y. Supp. 1036. The last case is very similar in its facts, so far as concerns the rate of interest to be received. The estate of the decedent consisted chiefly of moneys invested in a business, from which it was drawing interest at the time of his death at a certain rate. He gave his estate to his executor in trust to convert it into money and invest it in certain specified securities, and directed that the income of his estate should be paid to certain persons during their lives. It was held that the life beneficiaries were entitled to all the income accruing from the date of the testator's death, including as well the interest received from the business in which it was invested at the time of the decedent's death as that derived from the specified securities after the estate had been converted into money and invested as directed by the will. It appears that Mrs. Whitmore has already received direct, on account of this contract, the sum of $9,300. Henry Southgate, her trustee, has received at various times from the estate $48,420.47. For the purpose of ascertaining the amount still due from the estate, it will be convenient to treat all the payments, whether made direct to the cestui que trust or to her trustee, as payments generally on the count of both income and of the trust funds. So long as the debtors to the estate paid or caused to be paid interest on the full amount due the defendant, Mrs. Whitmore was entitled to receive interest at the rate of 8 per cent. upon the whole amount bequeathed for her benefit and still unpaid to her or her trustee. Hence interest on the whole amount of $70,000 should be calculated at that rate from the date of the testator's death to the date of the first payment, whether made to the defendant Whitmore herself or to her trustee; and the difference between such interest and the amount of such first payment, if any, should be credited as so much paid on account of the principal of the legacies. Interest at the same rate should be calculated on the balance remaining unpaid of the legacies from the date of the first payment to the date of the second payment, whether to her or her trustee, and the difference between such interest and the amount of such second payment should again be credited as so much paid on account of the principal of the legacies, and so on. Connecticut v. Jackson, 1 Johns. Ch. 13, 7 Am. Dec. 471. Upon any part of the principal paid by or on account of the debtors, whether the amount so paid has been held by the trust company defendant or has been paid over to Henry Southgate as trustee, the defendant Whitmore is entitled to receive interest only at the rate actually earned. The computation which shall show the amount now actually due on account of the legacies for the benefit of the defendant Whitmore can be made upon the settlement of the decree. It would not be proper on this action to go into an accounting between the defendant Whitmore and her trustee further than may be necessary to determine the amount still to be paid to the trustee from the estate of the testator.

The next question presented by the pleadings is raised by the administratrix with the will annexed of Hiram Hutchinson, who claims to be entitled to receive the income on one-third of the residuary estate from the date of testator's death to November 1, 1896, the date of the death of said Hiram Hutchinson. After providing for the annuities to Hiram H. Southgate, Leah Knapp, and Eugenie (the two latter having been afterwards revoked), the testator gave the residue of his estate to his executor in trust, and directed him "to divide into three equal parts, shares, or portions," and, as to one of said portions, to further hold it for the life of Hiram Hutchinson, paying the income to him. The administrator with the will annexed of the testator never did in fact divide anything into shares or portions under this clause, because nothing ever came into his hands except funds which they were required to pay out for debts or for charges upon the estate, which took precedence of the residuary bequest; consequently Hiram Hutchinson never received any income under this clause of the will. The testator seems to have regarded the division of the residue of his estate into three separate funds as something which could not take effect at once upon his death, but which would be necessarily postponed to some date subsequent thereto. He provides that:

"Should the said Hiram Hutchinson die before the division hereinbefore provided to be made, the share or portion that would be set apart for his benefit as hereinbefore provided shall be equally divided, and one equal moiety thereof set apart as and for the share of said Sarah Southgate, and the other equal moiety disposed of as hereinafter provided as and for the share of said Alcander Hutchinson."

Later on in the same clause he provides as follows:

"And upon the death of said Hiram Hutchinson at any time after a division in which he shall be and become entitled to an interest and benefit therefrom the part, share, or portion so set apart for his benefit shall be equally divided, disposed of, and in all respects be conveyed, paid, and delivered in precisely the same manner as hereinbefore provided with respect to such share in the event of his dying before such division."

A careful reading of these two provisions of the will seems to indicate clearly that the testator regarded the division of his estate into trust funds as a physical act to be performed by his executor at some time after his death, and that he intended that Hiram Hutchinson should receive the income of the bequest for his benefit only after such actual division was made. If he died before such division, that which was to go to Mrs. Southgate and Alcander Hutchinson was not expressed as his share in the estate, but as the share which "would be set apart for his benefit"; and in the second clause, relating to his death after the division, the language is, "at any time after a division in which he shall be and become entitled to an interest and benefit therefrom," thus apparently, in terms, providing that he should "be and become" entitled to a share or interest only when the actual division had been made. So, also, in both of the codicils, the testator treats the actual division of his estate into separate funds as something to be done at a period subsequent to, and not coincident with, his death. As to each of the legacies given to Henry Southgate, as trustee for Harriet A. Hume, he provides that the amount of such

legacy shall be taken by said trustee "out of my estate before and in preference to any division or distribution thereof as by my said will directed." My conclusion is that under the will as drawn Hiram Hutchinson was to become entitled to income only from the date that the executor had actually made a division of the estate, or, at least, had collected something more than enough to satisfy the debts, and set up the preferential trust; and, as that time had not yet arrived when Hiram Hutchinson died, he never acquired the right to receive income, and his administratrix has now no claim therefor.

The last question to be determined relates to the liability of the children of Alcander Hutchinson for the indebtedness which now constitutes the sole remaining asset of the estate. After the establishment of the trust fund for Harriet A. Hume or Whitmore, the remainder of the estate is to be divided equally between Mrs. Southgate and the children of Alcander Hutchinson, both Hiram H. Southgate and Hiram Hutchinson being now dead. It is the contention of the plaintiff that the children of Alcander Hutchinson are primarily liable under the contract for the repayment of the loan, and that no part thereof should be paid to them until they have paid or caused to be paid to the lawful owner of the contract the amount of the legacies provided for by the codicils, and one-half of the remainder of the loan. Alcander Hutchinson was the head of the firm of A. Hutchinson & Co., of Paris, to which firm the testator had loaned large sums of money. Alcander died on July 16, 1888, while the testator still lived. Alcander's children, or some of them, carried on the business after their father's death. Two years after Alcander's death, and on July 17, 1890, the contract to which reference has been made was entered into between the testator and the children of Alcander. This contract recited the fact that the testator had advanced to the firm of A. Hutchinson & Co., as a loan, certain sums derived from the estate of his father; that upon the death of Alcander the testator had proposed to continue said loan, then amounting to 629,200 francs, for a further period, at 8 per cent. annual interest, but that it was then considered impracticable to carry said proposition into effect, and that it was now, at the date of the contract, the intention of the children to effect the organization of a new copartnership, company, or corporation to take over and continue the business. It was thereupon agreed that the sum then owing to the testator amounted to 629,200 francs; that the testator agreed to transfer to the company to be organized his loan for a period of 10 years from the 1st day of August, 1890, the principal to be repaid at the expiration of said 10 years, or, at the company's option, in installments; that the loan should bear interest at 8 per cent. per annum, payable monthly. The children agreed to pay said interest until the company should be organized, and the testator released the children of Alcander, parties to the agreement, from all claims or demands whatsoever "other than due repayments of the aforesaid loan of 629,200 francs, with interest as hereinbefore expressly covenanted and agreed." The then existing firm of A. Hutchinson & Co. was a party to this agreement. Subsequent to this agreement, a new firm was formed under the name

of Hutchinson & Co., and later yet the children and members of the firm sold out to strangers, who formed a corporation, which took over the assets and business of the old firm. Both the firm formed subsequent to the agreement and the French corporation made payments, from time to time, on account of the principal and interest of the debt; but there is no evidence to show that they ever formally assumed the debt, so as to become primary debtors. There has been much discussion whether the disposition and administration of the personal estate of Alcander Hutchinson should have been governed by the laws of this state or by those of the republic of France, and, if under the latter, whether, by taking possession of the assets of said Alcander and dealing with them as their own, the children became, by force of law, liable for his debts. It is not necessary to pass upon that question. The children themselves answered it by their own actions. Whatever may have been their liability for the debt between the date of their father's death and the date of the contract, they clearly recognized and assumed the indebtedness by making the contract. They could have relieved themselves from this obligation by organizing a firm or corporation which should assume the debt, for the testator had expressly agreed to transfer the loan to such a firm or corporation. This, however, so far as appears, they never did. They did organize a new firm, and they did sell out to parties who organized a corporation, but there is no legal evidence that either of these ever assumed the debt in such manner as to become legally liable therefor. The testator, and, after his death, his personal representatives, were entitled at all times to have some one upon whom they could call for repayment of the debt. They could not be deprived of a debtor without their consent. Originally, the children of Alcander, by their own act, were such debtors, and, having failed to provide, in the manner contemplated by the contract, a new debtor, they themselves remained liable for the debt. It follows that they should be excluded from any share in the proceeds of the claim upon the contract until Henry Southgate, as trustee for Harriet A. Whitmore, shall have received the full amount of the legacies bequeathed to him, and the plaintiff Hutchinson Southgate, as trustee for Sarah E. Southgate, shall have received one-half of the remainder due upon said contract. The plaintiffs, and Henry Southgate as trustee, etc., and the defendant the Continental Trust Company, are entitled to costs out of the fund now in the hands of said trust company.

A decision and decree in accordance with the foregoing opinion may be settled upon three days' notice.

Judgment accordingly.