(57 App. Div. 44.)

In re BAKER'S ESTATE.

(Supreme Court, Appellate Division, Second Department. January 11, 1901.)

1. WILLS—TRUST FUNDS—EXECUTORS AS RESIDUARY LEGATEES—UNPAID INTEREST.

A testator died leaving $87,225 invested in bonds and mortgages and certain stocks, and a sum of money amounting in the aggregate to more than $10,000. By the terms of the will, $20,000 was to be set apart and invested for respondent by the executors, and a like provision was made for each of four other daughters. The residue of the estate was given to his two sons, the executors. The sons appropriated the money and the shares of stock, and for the first six months after the testator's death paid respondent the income on one-fifth of $87,225 instead of on $20,000. *Held,* that the executors were properly charged with interest for these six months on one-fifth the difference between the amount invested in bonds and mortgages and $100,000, the aggregate amount of the trust fund, since the personal estate appropriated by the executors was sufficient to provide such trust fund, and was earning interest during this time.

**2. SAME—MORTGAGES—ATTEMPT TO BENEFIT RESIDUARY ESTATE.**

A testator, after providing a trust fund for his daughters, gave his residuary estate to his sons, the executors of his will. Under this residuary clause, the executors took possession of about $10,000 worth of property, which did not leave enough of the estate to provide the trust fund. Mortgages, constituting part of the trust fund, were subsequently divided among the legatees, the executors assigning certain of these, aggregating $14,225, to themselves as trustees for respondent, and their own several bonds and mortgages, to make up the balance of $20,000, which was required by the will to be set apart for her. One of the mortgages so assigned was for $5,000 on property on which there was a second mortgage for $1,000, assigned at the same time to one of the other legatees. The executors subsequently purchased this property in behalf of the owners of the first and second mortgages for $200, which, with the interest and taxes due on the premises, was charged to respondent and the holder of the second mortgage in the proportion of 5 to 1. *Held,* that the executors were responsible for the loss accruing to respondent by placing these mortgages on the same footing, since this was an attempt to benefit the residuary estate at the expense of the trust fund, by making the second mortgage good at the expense of the first, and thus lessening the amount necessary to be drawn from the residuary estate in order to make up the total trust fund.

Appeal from surrogate's court, Queens county.

Judicial accounting of John C. Baker and James E. Baker, as executors of the will of Mills P. Baker, deceased. From a decree settling their accounts in the distribution of a trust fund, the executors appeal. Affirmed.

Henry A. Monfort, for appellants.

Wm. Allaire Shortt, for respondent.

WOODWARD, J. Upon the death of Mills P. Baker, father of the respondent, Mary A. Pelcher, which occurred on the 31st day of March, 1894, he left a last will and testament, with a number of codicils, in which his executors were directed to "set apart and keep invested, upon bond and mortgage, the sum of ten thousand dollars [afterwards increased to $20,000], and the income arising therefrom pay my daughter Mary A. [the respondent] during her natural life," and at her death to go to her issue, or, if none, to his other children, except Charlotte A., for whom a similar provision was made in the will. The executors were also directed to set apart and to keep invested a like sum for three other daughters by a second wife, and the residue of the estate, real and personal, was given to his two sons, the executors, "after the specific and general legacies have been paid or invested as provided in my will and the several codicils." The executors accepted the trust, and found that decedent had $87,225 invested in bonds and mortgages, exclusive of bonds and mortgages made by the executors, and which were discharged by the terms of the will, and certain stocks, and a sum of money amounting in the aggregate to $10,332. These shares of stock, with their income, together with the cash on hand, the learned surrogate finds were appropriated and divided between the executors. For the first six months after qualifying the executors paid to the respondent, not the income on $20,000, but one-fifth of the income of the $87,225, which the testator had invested in bonds and mortgages.

For a period of two years the executors held the $87,225 in bonds and mortgages as a separate fund, and made two mortgages on their own lands for sums sufficient, with the mortgages mentioned, to constitute a single fund of $100,000, and gave one-fifth of the income of this fund to each of the daughters from October 1, 1894, to October 1, 1896. In the meantime, however, and on April 1, 1896, the executors divided up the mortgages found in the estate, assigning to themselves, as trustees of Mrs. Pelcher (the respondent), certain of such mortgages, aggregating $14,225, and executed to themselves, as trustees, their own several bonds and mortgages for $2,887.50 each, to make up the $20,000. Among the mortgages so assigned for Mrs. Pelcher was a first mortgage bearing interest at 5 per cent. on property at the corner of Stone avenue and Hull street, Brooklyn, belonging to one Militscher, for $5,000. A second mortgage on the same property, bearing interest at 6 per cent., and for the sum of $1,000, was at the same time assigned to the fund for Mrs. Clark, one of the daughters of the decedent. At the time of this assignment there were due half a year's interest and two years' taxes on the mortgaged premises, and subsequently the executors, instead of foreclosing respondent's first mortgage on default of interest, took the premises in behalf of the owners of the first and second mortgages, paying the mortgagor $200 for his equity in the premises. This amount, together with the interest and taxes due upon the premises, was charged to the respondent and Mrs. Clark in the proportion of 5 to 1. By this process the income of the respondent was practically wiped out for a considerable period, and the executors are still holding this property, at present unproductive, and affording no return to the respondent.

The learned surrogate, upon a hearing of the matter, decreed that the respondent was entitled to an income, in addition to what she had already received, of $1,216.79, and that, "said executors and trustees having unlawfully and without authority invested the sum of five thousand dollars, part of the principal of the trust fund directed by the said will to be set apart and invested for the benefit of said Mary A. Pelcher and remainder-men in the purchase of certain real property, and having also unlawfully invested on bonds and mortgages made by themselves a sum of five thousand seven hundred and seventy-five dollars, being a part of said trust fund, it is further ordered, adjudged, and decreed that said executors and trustees do forthwith invest upon bond and mortgage, other than bonds and mortgages made by themselves or upon property owned by them, the sum of ten thousand seven hundred and seventy-five dollars." The executors appeal from this decree.

It is urged that the court erred in charging the executors with interest for the first six months after testator's death on one-fifth of the difference between the amount left by the testator invested on bond and mortgage ($87,225) and the aggregate amount of the trust fund ($100,000). We are of opinion, however, that under the rule long established in this state, and reasserted in Re Stanfield, 135 N. Y. 292, 297, 31 N. E. 1013, the respondent was entitled to interest on the full amount of the trust fund from the death of the

testator. There is no doubt that the personal estate of the decedent was sufficient to provide the trust funds, which, by the terms of the will, were to be provided out of the personal estate, and that this was all, or nearly all, earning interest at all times subsequent to the death of the testator.

We are equally clear that the action of the executors in taking the Militscher property, and placing the respondent's first mortgage on the same footing with that of a second mortgage, was not a compliance with their duties as trustees, and that the loss resulting to the respondent from such conduct should be reimbursed. There was an apparent effort to make the allotment of securities to Mrs. Clark good at the expense of the respondent, while the will contemplated that the executors should afford to each of the five daughters an income from the investment of $20,000 on first bonds and mortgages. It hardly seems necessary to cite authorities in support of the proposition that trustees have no right to benefit themselves at the expense of the beneficiaries of the trust, and there is no other motive apparent in the transaction with the Militscher property. The trustees had no right to assign a second mortgage as a part of the trust fund for Mrs. Clark, to the end that the residuary estate should be as little impaired as possible. Having done so, they had no right to attempt to make the second mortgage good at the expense of the respondent's security for her income, and the whole transaction is lacking in that good faith and fairness which is demanded of trustees. If the trust funds had been provided, as directed by the will, the executors would be charged only with the exercise of reasonable care and diligence to keep the investments in a condition to earn an income; but until these funds had been set aside in entire good faith, according to the letter and the spirit of the trust, the residuary legatees, acting as trustees for the respondent, would have no cause for complaint if they were compelled to pay the legal rate of interest to the respondent, instead of the income with which they are charged by the learned surrogate. The matter appears to have been properly disposed of by the court below, which has done no more than to direct that the terms of the will shall be complied with in the manner pointed out by the law in respect to trusts of this character.

The decree appealed from should be affirmed, with costs to be paid by the appellants personally. All concur, except SEWELL, J., who took no part.