In the Matter of the Judicial Settlement of the Accounts of WIL-
LIAM H. SLOCUM and JOHN P. DOUGLASS, as Surviving Executors
and Trustees of the Last Will and Testament of ROBERT F. AUS-
TIN, Deceased.

WILLIAM H. SLOCUM and JOHN P. DOUGLASS, as Surviving Execu-
tors and Trustees of ROBERT F. AUSTIN, Appellants and Respond-
ents; ANNA B. AUSTIN and Others, Respondents and Appellants.

*A gift by will of " the income of my said estate" gives the income from the testator's
death — commissions in the capacity of executor and of trustee — waiver of com-
missions on income.*

A decedent, whose estate consisted chiefly of the capital invested by him in a
copartnership, where it was drawing seven per cent interest at the time of his
death, left a will by which he gave his entire estate to executors in trust to
convert it into money and to invest the proceeds in certain specified securities.
He then directed that " the income of my said estate " should be paid to cer-
tain persons during their lives.

*Held,* that the life beneficiaries were entitled to all the income accruing from the
date of the testator's death.

In such a case the executors are entitled to commissions in that capacity and also
as trustees. They are also entitled to commissions on the annual income; but,
if they pay over the entire annual income to the life beneficiaries without mak-
ing any deduction for commissions, they cannot deduct such commissions
from the principal which passed to another set of beneficiaries.

CROSS-APPEALS by William H. Slocum and John P. Douglass, as
surviving executors and trustees of Robert F. Austin, deceased, the
petitioners, and by Anna B. Austin and others, the contestants,
from a decree of the Surrogate's Court of the county of Kings,
entered in said Surrogate's Court on the 16th day of May, 1900,
judicially settling the accounts of said executors and trustees.

*Richard T. Greene,* for appellants and respondents William H.
Slocum and John P. Douglass, executors, etc.

*Thomas M. Rowlette,* for respondents and appellants Anna B.
Austin and others.

*John A. Straley,* for respondent Robert B. Austin.

HIRSCHBERG, J. :

The main contention is with respect to payments made by the executors and trustees of alleged income amounting to the sum of $21,763.07. That amount appears to have been paid to the life beneficiaries in the belief on the part of the executors that the life tenants were entitled to the income of the estate earned during the first year. The decree of the surrogate is based on the report of a referee who, after a very thorough and painstaking examination. of the authorities, reached the conclusion that these beneficiaries were only entitled to receive the income of the estate commencing and accruing one year after the testator's death. The result requires the executors to pay this large sum a second time, and only the clearest requirements of the law will justify it. In his report the learned referee states: " The executors for fourteen years have honestly administered the estate. In course of administration they have in good faith and in full belief that therein they were carrying out the wishes of the testator and the injunctions of his will, paid out this large sum, in the proportions directed and partly to the parents of these residuary legatees. These moneys have no doubt been largely used for their education, maintenance and support. It would, therefore, be quite satisfactory to affirm the transaction as if made pursuant to the will and the law. But this, as I understand both, may not be done."

An examination of the will and of the authorities presented convinces me that this may be done,. and that in paying out for the benefit of the life beneficiaries the income of the first year, the executors followed both the intention of the testator and the requirements of the law.

The testator, Robert F. Austin, at the time of his death, which occurred on March 31, 1885, was a member of a large grocery firm, from the business of which he was deriving a large annual income. His wealth was almost all invested in that business. The copartnership articles provided that each partner should receive seven per cent interest on his capital, to be charged to the expenses of the business, before any profits should be. divided, and the testator received, or was entitled to receive, for the year prior to his death, over $42,000 in interest and profits. The copartnership articles further provided that in case of the death of a partner the business

might be continued by his legal representatives and the survivors of the firm for their joint benefit, until the first day of January succeeding the death; and the business was so continued in this case until January 1, 1886.

The will is dated January 31, 1877, and provides, so far as is material to the present inquiry, as follows:

"*First.* I give, bequeath and devise unto my executors hereinafter named * * * all of my property, real and personal, of every name, nature and kind, of which I shall die seized or which I may have or own at the time of my decease, for the following uses and purposes, and to be held and disposed of by them as follows, viz.: I direct and require them to sell and convey the real estate, and convert all of said property, real and personal, into money as soon as it can conveniently be done without prejudice or injury to the estate, and after paying my debts and such necessary expenses as are properly payable therefrom, to invest the same in bonds and mortgages on improved farming lands, * * *. In case any part of the money or proceeds of my said estate cannot be safely invested in the manner aforesaid, or if any part thereof cannot be so invested in such securities without great hazard, loss or sacrifice, such money may be invested in bonds and mortgages on first-class city property. * * * In case my executors shall at any time have on hand any money — proceeds of my said estate — that cannot be properly invested as aforesaid or in sums not sufficiently large to be profitably invested as hereinbefore provided, I desire and direct them to deposit the same in such savings bank or banks * * * as shall have at the time a surplus of at least one hundred thousand dollars exclusive of real estate owned by them.

"*Second.* The income of my said estate, after deducting the necessary costs and expenses of investing the property and collecting the income, is to be, and I will and direct that the same be paid out and disposed of as follows, viz.: Two-thirds thereof is to be annually retained by or paid over to my beloved wife, Anna Schuyler Austin, during her lifetime, and is to belong absolutely to her. The remaining one-third I direct and require my said executors to pay out for the necessary use and expenses of the family of my beloved son, Daniel W. Austin, including himself, in such sums,

for rent, food, clothing, family supplies and expenses as may be necessary for the support of himself and family.

" *Third.* From and after the death of my said wife, in case my said son shall then be living, I direct and require that all of the income of my said estate be paid out annually and in such sums as may be needed for the support and maintenance of my said son and his family in the manner and as provided in the next preceding (the second, clause of this). But in case my said son shall not then be living, it is my will and I direct that my whole estate shall be given to and be divided among his children and his widow (if there shall then be one), share and share alike."

The rule governing the construction of this will in its relation to the controverted question as deducible from all the authorities was stated with great clearness by Judge MAYNARD in *Matter of Stanfield* (135 N. Y. 292). · He said (p. 294): " Where the income of an estate, or of a designated portion, is given to a legatee for life, we think it is clear that he becomes entitled to it *whenever it accrues,* and if the estate is productive of income *from the death of the testator,* he can require the executor to account to him for the income *from that time.* The rule that general legacies shall not bear interest until the expiration of one year from the grant of letters testamentary, or of administration (*Matter of McGowan,* 124 N. Y. 526), has no application in such a case. It is, by its terms, limited to general legacies payable out of the *corpus* of the decedent's estate. In the present case the bequest is not of a part of the principal of the estate, *or of any property possessed by the testator in his lifetime ;* but of that which is to arise or accrue after his death from a specified fund to be set apart for that purpose. It is *the income* which constitutes the respondent's legacy. He is not seeking to charge the estate with interest upon his legacy, but is simply endeavoring *to secure the legacy itself*, and his effort, therefore, involves no infringement of the rule regulating the payment of interest upon general legacies." In reference to the necessity for an investment of the fund by the executor as bearing upon the right to immediate interest, he said (p. 295): " The direction to the executor with respect to the investment of the fund, has reference to *the administration of the trust* and cannot be available to

defeat the legatee's title to income accruing previously to the time when the investment is required to be made. Until it is made an equivalent in value of the property out of which the fund is to be raised must be deemed to stand in place of the investment, and *whatever income arises* from it meanwhile, *belongs to the legatee to whom* it has been expressly given." And, at page 297, he supplied both a rule and a test to determine the question under consideration in all cases, viz.: "If the estate is sufficient for the liquidation of debts and other charges, and is so invested as to be productive of income from the death of the testator, a bequest of 'income to a legatee for life must be construed to invest him with a title to such income *from the date of the testator's demise,* unless there is some provision in the will from which a contrary intent is to be inferred."

On the principles enunciated in the *Stanfield* case and supported by substantially every precedent authority, the life tenants in this case should be held entitled to all the income accruing from the date of the testator's death. There is nothing in the will to indicate a contrary intent. The direction to convert the estate into money and to invest the money in the specified securities is not a controlling condition where the income bequeathed is not in terms the income arising from the investments, or the income accruing after the investment, but is as here "the income of my said estate" and "all of the income of my said estate." The cases which controlled the learned referee and surrogate are clearly distinguishable by this distinction. *Vickers* v. *Scott* (3 M. & K. 500) presented the question as to when the life tenant would be entitled to the rent of real estate. The will directed a sale of the real estate and the investment of the purchase money. " *Upon investment thereof* " the income *derived from such investment* was bequeathed. The Master of the Rolls, Sir JOHN LEACH, said (p. 504) : "The tenant for life, *by the clear language of the will,* is not entitled to the rents and profits of the residuary real estate until it has been sold, and the produce invested."

So, too, in *Clifford* v. *Davis* (22 Ill. App. 316) the bequest was in express terms the interest to be collected by the executor on *his investments.* The court said (p. 320): " *The general rule* is, that in case of the bequest of a life estate in a residuary fund, and where no time is prescribed in the will for the commencement of the inter-

est or the enjoyment of the use or income of such residue, the legatee for life is entitled to the interest or income of the clear residue, as afterward ascertained, to be computed *from the time of the death of the testator*. When, however, the testator has directed one species of property to be converted into another, or the residuary fund to be invested in a particular manner, and has given a life estate *in the fund as thus converted or invested,* then, in such event, it is deemed to be consistent with the will of the testator to consider the life interest as commencing when the conversion takes place or the investment is made." And, at page 324, the court said: " The holders of this life interest must be willing to accept the bounty of the testator upon the terms upon which it was given. The will donated to them no interest whatever in the lands, or in the rents, issues and profits thereof, and it did not bestow upon them the chattel property or the choses in action on hand at the time of the death, or any interest thereon or increase therein which might accrue; these things were all expressly devised and bequeathed to the executor, but upon the trusts declared in the will. That which was given to these donees was specifically the interest to accrue upon a fund yet to be created, *and that only.*"

In *Williamson* v. *Williamson* (6 Paige, 298) the chancellor said (p. 304): " The result of the English cases appears to be, and I have not been able to find any in this country establishing a different principle, that in the bequest of a life estate in a residuary fund, and where no time is prescribed in the will for the commencement of the interest, or the enjoyment of the use or income of such residue, the legatee for life is entitled to the interest or income of the clear residue, as afterwards ascertained, to be computed from the time of the death of the testator. All the cases which appear to conflict with this rule, except the two decided by Sir JOHN LEACH, which are no longer to be considered as authority, will be found to be cases in which the testator had directed one species of property to be converted into another, or the residuary fund to be invested in a particular manner, and had *then* given a life estate in *the fund as thus converted or invested.* In such cases it appears to be consistent with the will of the testator to consider the life interest as commencing when the conversion takes place, or the investment is made, either within the year or at the expiration of that time."

The learned referee has found that in this case the intent of the testator was " (1) That all his estate should first be converted into money. (2) That it should then be invested in specified securities or deposited in savings banks. (3) That the income *from such investments* and deposits should, *after it had so accrued*, be paid over annually and during their lives to the testator's widow, and to or for the support of his son and family." But nothing is clearer than that the testator has not in terms limited the life estate to the fund to be created by the conversion and investment. What he gives is " the income of my said estate," not the income arising from the investments, nor even the income collected after the conversion and investment. It is true that the bequest is only " the income of my said estate," after deducting the costs and expenses of investment and collection, but that is only another way of saying " the *net* income of my estate," and is merely a recognition of expense as a necessary incident to the process of administration. In the absence of this direction the deduction of the expense would be equally imperative. The testator knew that his estate was chiefly embarked in the grocery business, where it was invested at interest constituting a debt or obligation of the firm which was payable to him irrespective of profits, and which until the conversion and investment which he directed, with whatever profits might accrue, would furnish adequate income for the support of his widow and his son's wife and family; and consequently in the general provision which gave them for life the entire income of his estate for support and maintenance, the income accruing before as well as after the conversion and investment must be considered to be included, in the absence of any provision in the will from which a contrary intent can be inferred.

All the cases seem to accord with the views herein expressed. (See *Cooke* v. *Meeker*, 36 N. Y. 15; *Rodman* v. *Fincke*, 68 id. 239; *Matter of Schermerhorn*, 29 N. Y. St. Repr. 196; *Wells* v. *Knight*, 5 Hun, 50; *Powers* v. *Powers*, 49 id. 219; *Barrow* v. *Barrow*, 55 id. 503; *Matter of Barnes*, 7 App. Div. 13; *Sargent* v. *Sargent*, 103 Mass. 297.) I find none of the cases cited by the respondents to be in contravention of the principle in issue. They are all cases where the fund to be invested is first to be obtained by a sale and conversion, the subsequent gift being expressly attached to the fund so created, and none where the gift is of the interest arising

from the entire estate unqualified by the fact of conversion, either in point of time or of extent.

In relation to the controversy over the commissions an appellate court can do little more than announce the principles established by the authorities. The executors are entitled to commissions in that capacity and also as trustees. (*Matter of Johnson*, 57 App. Div. 494.) They are also entitled to commissions on the annual income, unless they are found to have waived the right by paying over the entire income without any deduction for commissions, and without retaining in their hands or afterwards receiving any funds belonging to the same beneficiaries, and from which such commissions could afterwards be deducted. That is to say, they cannot pay the income in full and deduct commissions on such income from the principal where the income goes to one set of beneficiaries and the principal to another. By paying in full without retaining the commissions, where such commissions if afterwards collected would be charged upon other beneficiaries, the right is clearly waived. (*Spencer* v. *Spencer*, 38 App. Div. 403; *Matter of Haight*, 51 id. 310.)

The account will of necessity require to be restated in order to determine the exact amount of income and its proper disposition in accordance with this opinion, and the commissions can then be adjusted as suggested. It may be that upon such readjustment, the expenses of the liquidation of the business of the firm being charged ratably and equitably as against principal and income, surplus income will be disclosed sufficient to meet the commissions which the appellants would otherwise lose, but which may thus be saved to them unless the surrogate shall find a waiver as a matter of fact.

The decree should be modified and the proceedings remitted to the surrogate for disposition accordingly.

All concurred.

Decree of the Surrogate's Court of Kings county modified and proceedings remitted for disposition in accordance with opinion of HIRSCHBERG, J., with costs to all parties to this appeal payable out of the estate.