(74 App. Div. 150.)

SOUTHGATE et al. v. CONTINENTAL TRUST CO. OF CITY OF NEW
YORK et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. TRUSTS—CREATION—SUBSTITUTION—ADDITION.

Where a testator created a trust, by a first codicil, for the benefit of
a woman with whom he was living, and two months thereafter created
another trust, by a second codicil, for the benefit of the woman and
any child that might be born of their intimacy, the second trust should
be regarded as an addition to, and not in substitution for, the first trust;
there being nothing in the second codicil tending to show an intended
revocation of the first.

2. SAME—INVESTMENT—INTEREST.

Where a will provided for the creation of a trust fund out of testator's
general estate before any distribution or division thereof, and that the
net income of the fund should be paid to one for life, and it was neces-
sary for the creation of the fund to resort to assets of the testator which
were drawing interest at 8 per cent., the beneficiary was not entitled to
interest at 8 per cent. from the date of testator's death, but only to
the interest which it was shown might reasonably be earned.

McLaughlin, J., dissenting in part.

Appeal from special term, New York county.

Action by Hutchinson Southgate, as trustee, etc., and another,
against the Continental Trust Company of the City of New York and
others, for the construction of the will of Charles L. R. Hutchinson,
deceased. From the decree (73 N. Y. Supp. 718), plaintiffs and certain
defendants appeal. Modified.

Argued before PATTERSON, HATCH, McLAUGHLIN,
O'BRIEN, and INGRAHAM, JJ.

O. J. Wells, for appellants Southgate.
Franklin Bartlett, for other appellants.
Sherman Evarts, for respondent Harriet A. Whitmore.
Percival S. Menken, for respondent Henry Southgate, as trustee.

PATTERSON, J. I concur in the views expressed by the learned
judge at special term upon all the questions involved in this case, with
the single exception of that relating to the amount of interest to which
the defendant Harriet A. Hume (Whitmore) was adjudged to be en-
titled. I think the two legacies to Harriet A. Hume (Whitmore) were
cumulative, and that the specific legacy of $50,000 did not supersede
and cancel or displace that of $20,000 previously made by the testator
to her. I am also of the opinion that the learned judge at special term
properly disposed of the question concerning the rights of the children
of Alcander Hutchinson, and their exclusion from any share of the
estate until Henry Southgate, as trustee for Harriet A. Hume (Whit-
more), and Hutchinson Southgate, as trustee for Sarah E. Southgate,
shall have received what is due them,—the latter upon the contract
by which the children of Alcander Hutchinson assumed the indebted-
ness of their father to the firm of Hutchinson & Co.

The allowance of 8 per cent. to Harriet A. Hume (Whitmore) upon
the legacies of $70,000 given to her, it seems to me, is altogether im-
proper. That award proceeds upon the theory that, inasmuch as the

testator made these two legacies preferential, they are entitled to draw interest at the rate of 8 per cent., because some of the testator's property out of which the fund is to be constituted consisted of an indebtedness that was drawing by contract 8 per cent. interest. This claim is made under the authority of what was held in Re Stanfield, 135 N. Y. 292, 31 N. E. 1013; In re Baker's Estate, 57 App. Div. 44, 68 N. Y. Supp. 44; and in Re Slocum, 60 App. Div. 441, 69 N. Y. Supp. 1036. It seems to me, however, to be clear that what was held in those cases does not apply here, because there is nothing to indicate an intention on the part of the testator to do otherwise than have the trust for the benefit of Harriet A. Hume (Whitmore) constituted out of his general estate, after it should have been fully administered by his executors. There is nothing to indicate that he meant anything other than he said, viz., that the trust fund was to be created for the benefit of Harriet A. Hume (Whitmore) out of his general estate, before any distribution, or division thereof was had, and the net income of the fund thus created was to be paid over to her. The trust was to be constituted as an entirety. There is nothing in the will to justify the assumption that because, after administration of the estate, it turned out that certain of the assets were earning interest at a certain rate, and that it is necessary to resort to those assets to constitute the fund, therefore all that those assets earned by way of interest must go to the beneficiary of the trust to be created. The gifts were not specific, and there is no right of selection given either to the trustee or the beneficiary.

I am of the opinion that it appears from this will that it was the intention of the testator that Harriet A. Hume (Whitmore) should receive only net income to be derived from a fund to be invested by a trustee, which fund was to be constituted out of the general estate of the testator after administration, and that this case is distinguishable from those upon which the respondent Harriet A. Hume (Whitmore) relies. I think that the judgment of the special term in this respect was erroneous, and that it should be modified by allowing to the respondent Harriet A. Hume (Whitmore) interest only at such rate as might be reasonably earned thereon, which, according to the evidence, is 4 per cent., and that the provisions of the judgment relating to the interest to be paid by the Continental Trust Company to Harriet A. Hume (Whitmore) should be modified to correspond with the views expressed herein.

As so modified, the judgment should be affirmed, without costs.

O'BRIEN, INGRAHAM, and HATCH, JJ., concur.

McLAUGHLIN, J. I concur in the opinion of Mr. Justice PATTERSON, except as to the rate of interest to which Harriet A. Hume (Whitmore) is entitled, and as to that I dissent. I think she is entitled to 8 per cent., and that the learned justice at special term did not err in so holding. By the codicils it will be observed that the $70,000 given to Henry Southgate as trustee, "to invest and reinvest the same, collect the income therefrom, and pay the net annual income in equal quarterly payments" to Harriet A. Hume (Whitmore), was to be paid out of the testator's estate "before and in preference to any

division or distribution thereof in my said will directed." Under this provision, after the payment of debts and expenses of administration, the trustee was entitled to receive from the executor $70,000, in order that the trusts might be set up, and the executor was bound by the express provisions of the will to pay over to the trustee the first moneys that came into his hands, so that the intent of the testator in this respect might be carried out. When the testator died, substantially his entire estate—indeed, all of it that now remains, as well as that theretofore paid to Harriet A. Hume or her trustee—was loaned to the firm of A. Hutchinson & Co., of Paris; and, under an agreement entered into between the testator and the widow and children of Alcander, this loan drew interest at the rate of 8 per cent. per annum. More than enough of this loan has been paid to set up both trusts, together with the interest thereon at the rate of 8 per cent. to the time of payment. It seems to me that a slight consideration of the two codicils, when read in connection with the will, clearly shows that the testator intended that Mrs. Whitmore should, upon his death, enjoy the income derived from the two funds named, and that he did not intend that any one but her should have the same. Otherwise there is no meaning in the words used by him, directing the payment to the trustee, viz., "before and in preference to any division or distribution." She was to have her income irrespective of any of the other provisions of his will. When he died the trust could not be set up, because his estate, as already said, was then invested, and drawing interest at the rate of 8 per cent. per annum, and it could not be set up until the same, to the extent of $70,000, had been paid; but the moment that such sum had been realized from the investment, that moment the executor was obligated to pay the same to the trustee. Equity always treats that to have been done which ought to have been done. The loan should have been paid and the trusts set up immediately following the testator's death, and, if it had been, Mrs. Whitmore would have received whatever amount the fund earned; and the fact that it was not done immediately following the testator's death cannot be used to her prejudice. She is entitled to receive whatever interest the fund earned intermediate the death of the testator and payment by A. Hutchinson & Co. The money earned 8 per cent., and, if effect be given to the testator's intent, it belongs to her.

In re Stanfield, 135 N. Y. 292, 31 N. E. 1013, seems to me to be directly in point. There the testator directed his executors to invest $20,000 in bonds and mortgages, or government bonds, and pay over the income therefrom to his son for life, and at his death the principal to another. It appeared that the corpus of the estate was so invested at the time of the testator's death as to produce 6 per cent. interest. The investment directed to be made for the son not having been made, proceedings were taken by the son, in surrogate's court, to compel the executor to pay to him the interest received on the $20,000; and, in affirming the order directing the executor to pay a certain sum, the court said:

"Where the income of an estate, or of a designated portion, is given to a legatee for life, we think it is clear that he becomes entitled to it whenever it accrues; and, if the estate is productive of income from the death of

77 N.Y.S.—44

the testator, he can require the executor to account to him for the income from that time. The rule that general legacies shall not bear interest until the expiration of one year from the grant of letters testamentary or of administration (In re McGowan, 124 N. Y. 526, 26 N. E. 1098) has no application in such a case. It is by its terms limited to general legacies payable out of the corpus of the decedent's estate. In the present case the bequest is not a part of the principal of the estate, or of any property possessed by the testator in his lifetime, but of that which is to arise or accrue after his death from a specified fund to be set apart for that purpose. It is the income which constitutes the respondent's legacy. He is not seeking to charge the estate with interest upon his legacy, but is simply endeavoring to secure the legacy itself, and his effort therefore involves no infringement of the rule regulating the payment of interest upon general legacies. * * * The gift of the income is independent of the gift of the principal, and the right to the income does not depend upon the investment, but was created and exists regardless of it. The direction to the executor with respect to the investment of the fund has reference to the administration of the trust, and cannot be available to defeat the legatee's title to income accruing previously to the time when the investment is required to be made. Until it is made, an equivalent in value of the property out of which the fund is to be raised must be deemed to stand in place of the investment, and whatever income arises from it meanwhile belongs to the legatee to whom it has been expressly given. * * * If the estate is sufficient for the liquidation of debts and other charges, and is so invested as to be productive of income from the death of the testator, a bequest of income to a legatee for life must be construed to invest him with a title to such income from the date of the testator's demise, unless there is some provision in the will from which a contrary intent is to be inferred."

In re Slocum, 60 App. Div. 438, 69 N. Y. Supp. 1036, affirmed as to this point in 169 N. Y. 153, 62 N. E. 130, is also in point. There the property of the testator was invested, and at the time of his death was drawing 7 per cent. interest. By his will he directed that his property be converted into money, and invested in bonds and mortgages on improved farming lands, and that one-third of the income derived therefrom be paid to his son during his life, and two-thirds of such income be paid to his wife during her life. The court held that the life beneficiaries were entitled to all of the income accruing from the date of the testator's death. Judge Hirschberg, delivering the opinion, in which all of the other members of the court concurred, said:

"On the principle enunciated in the Stanfield Case, and supported by substantially every precedent and authority, the life tenants in this case should be held entitled to all the income accruing from the date of the testator's death. There is nothing in the will to indicate a contrary intent. The direction to convert the estate into money and to invest the money in the specified securities is not a controlling condition, where the income bequeathed is not in terms the income arising from the investments or the income accruing after the investment. * * * The testator knew that his estate was chiefly embarked in the grocery business, where it was invested at interest, constituting a debt or obligation of the firm, which was payable to him irrespective of profits, and which, until the conversion and investment which he directed, with whatever profits might accrue, would furnish adequate income for the support of his widow and his son's wife and family, and consequently, in the general provision which gave them for life the entire income of the estate for support and maintenance, the income accruing before, as well as after, the conversion and investment, must be considered to be included, in the absence of any provision in the will from which a contrary intent can be inferred."

See, also, cases cited in Judge Hirschberg's opinion, 60 App. Div., on page 444, 69 N. Y. Supp., on page 1040.

This case is important, because on appeal to the court of appeals that court adopted, so far as the question of interest and the time when it became payable is concerned, the opinion of the appellate division. See 169 N. Y. 159, 62 N. E. 130.

Applying the principle laid down in these authorities, if effect is to be given to the testator's intent, then it seems to me that the special term correctly held that the trustee is entitled not only to receive interest upon the fund bequeathed to him in trust from the date of the testator's death, but to receive interest at the rate at which the funds were invested (8 per cent.) when the testator died, until the same had been paid.

I think the judgment should be affirmed.

---

(74 App. Div. 291.)

PEOPLE ex rel. LAHEY v. PARTRIDGE, Police Com'r, et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. CITIES—POLICE—DETECTIVE SERGEANTS—APPOINTMENT BY LEGISLATURE.

Const. art. 10, § 2, provides that all city officers whose election or appointment is not therein otherwise provided for shall be elected by the electors of such cities, or appointed by such authorities, as the legislature shall designate. New York City Charter, § 290, provides for the appointment, by the police board, of patrolmen to act as detective sergeants, but gives such board power to reduce any such detective sergeants to the rank of patrolmen at any time. Laws 1901, c. 466, § 1, provides that the patrolmen occupying the position of detective sergeants on April 1, 1901, shall occupy that position permanently, and not be reduced in rank except in the manner provided for sergeants in the regular police force. Held, that the latter act constituted a permanent legislative appointment to a city office, in conflict with Const. art. 10, § 2.

Appeal from special term, New York county.

Mandamus by the people, on relation of William J. Lahey, against John N. Partridge, as commissioner of police of the city of New York, and others, to require respondents to certify relator on the pay roll of the police department as a detective sergeant. From an order granting the writ, respondents appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Terence Farley, for appellants.
Vernon M. Davis, for respondent.

INGRAHAM, J. Upon the 17th day of April, 1901, Michael C. Murphy, the police commissioner of the city of New York, made and promulgated the following order:

"Ordered, that Patrolman William J. Lahey, of the Central Office squad, be, and is hereby, appointed as a detective sergeant, and assigned to duty in the detective bureau as such."

From the date of that order to and including February 1, 1902, the relator performed duty as a detective sergeant in the city of New York. His name appeared upon the pay roll of the department from the date of his appointment to and including the month of December,