In the Matter of the Estate of HENRY B. BILLINGS, Deceased.

Surrogate's Court, Clinton County, August 6, 1930.

Patrick J. Tierney, for the petitioner and sole executor, Chester Billings.

George K. Large, for Mae Taylor Higgins and Florence Emery Higgins.

Irving I. Goldsmith, for John Kopka.

Harold A. Jerry, special guardian for John F. Kopka and Richard J. Kopka, infants.

HARRINGTON, S.   This is a special proceeding for the construction of decedent's will, pursuant to section 145 of the Surrogate's Court Act.   Decedent's will, dated August 27, 1928, and prepared by the attorney for the petitioner herein, was duly admitted to probate by this court on November 5, 1928.   The inventory filed shows personalty of the appraised value of $918,003.62 and realty of the appraised value of $36,000.

The will contains nine paragraphs.   Petitioner requests that five of these be construed by this court.   They read as follows:

" Second. I give and bequeath in trust to my wife's faithful servant, John Kopka, the sum of Fifty thousand ($50,000) dollars the income of which is to be used for the purpose of educating his sons providing for them College Educations if they are able to complete their courses in a college or colleges in the United States to be selected by their father."

" Fifth. I give and bequeath to my executor hereinafter named

the sum of Ten thousand ($10,000) dollars to be held by him in trust and the same to be invested in legal trust funds of the State of New York and the income therefrom paid monthly during her life time to my wife's faithful nurse, Kate Murphy.

" *Sixth.* I give and bequeath to Mae Taylor Higgins all my deceased wife's dresses and jewelry to be distributed by said Mae Taylor Higgins as she understood they were to be distributed by my wife.

" *Seventh.* I give and bequeath to my executor and trustee hereinafter named the sum of Two hundred fifty thousand ($250,000) dollars to be by him invested and the income therefrom paid to Mae Taylor Higgins during her life time and on her death I give devise and bequeath the said sum of Two hundred fifty thousand ($250,000) dollars to Florence Emery Higgins, the daughter of said Mae Taylor Higgins.

" *Eighth.* I give, devise and bequeath to my executor hereinafter named the sum of One hundred thousand ($100,000) dollars, to be by him invested and the income thereof paid to my wife's beloved friend, Margaret Gilliland Herrick and to her husband Charles Herrick and on her death I give and bequeath the said sum of One hundred thousand ($100,000) dollars to Kathryn Gilliland Herrick, daughter of said Margaret Gilliland Herrick and Charles Herrick."

After this proceeding was commenced, a compromise agreement was executed by all parties interested in paragraph " Second " of the will, and the same was duly approved by an order of this court, pursuant to section 24 of the Personal Property Law. This disposes of the construction of said paragraph, except as to the amount of interest to be allowed on the principal sums mentioned in said compromise agreement.

Under paragraph " Fifth " a trust was created for the benefit of Kate Murphy during her life. This trust has all of the necessary elements for the creation of a valid trust, namely, a trustee, an estate devised, and a beneficiary. No disposition is made of the corpus of the trust fund upon the death of the beneficiary of the trust. As to that, it must be held that decedent died intestate. Upon the decease of Kate Murphy, the principal of the trust fund will pass to the residuary legatees, Chester Billings and Kate Billings Scott.

Counsel for Mae Taylor Higgins contends that the language of paragraph " Sixth " should be construed as constituting an absolute bequest of the property therein mentioned to Mae Taylor Higgins; that the phrase, " to be distributed by said Mae Taylor Higgins as she understood they were to be distributed by my wife," should

be considered as being mere precatory words. Counsel for the residuary legatees urges that an absolute gift was not intended; that decedent attempted to create a trust but as the beneficiaries are not named, the trust is invalid; that the testator died intestate as to the property mentioned in said paragraph, and that it should pass to the residuary legatees.

In a proceeding for the construction of a will, one of the cardinal rules of construction is that the court shall endeavor to ascertain the intention of the testator and when ascertained it shall prevail over all other rules of construction. (*Cammann* v. *Bailey*, 210 N. Y. 19, 30.) There is no evidence before this court from which the intention of the testator can be ascertained except the will. It is, therefore, the duty of this court to ascertain, not merely the intention of the testator, but his expressed intention from the words he has used, and to give effect to the legal consequences of that intention as thus expressed. (*Matter of Silsby*, 229 N. Y. 396, 404.)

Counsel for Mae Taylor Higgins cites another rule of construction to the effect that where an estate is given in one part of a will in clear and decisive terms, it cannot be taken away or cut down by raising a doubt as to the meaning or application of a subsequent clause, nor by any subsequent words which are not as clear and decisive as the words giving the estate. I had occasion to follow this rule in *Matter of Tallman* (131 Misc. 863, 866). In that case there was an absolute devise of real estate to decedent's son. In a subsequent sentence a legacy was given with certain restrictions, one of which was that the title to said real estate should never pass from decedent's family name. I held that this language could not restrict the previous devise of the real estate, for the reason that where an estate in fee simple is granted, a condition that the grantee shall not alienate the land, or shall alienate it only to those having the testator's family name, is void for the reason that a fee simple estate and such a restraint upon its alienation cannot in their nature co-exist. Such a condition is void for repugnancy. (Schouler Wills [6th ed.], p. 1481; *Hacker* v. *Hacker*, 153 App. Div. 270, 272, 273; *Schermerhorn* v. *Negus*, 1 Den. 448.) Furthermore, the above-mentioned rule of construction is to be used only when the subsequent words are not as clear and decisive as the words giving the estate. In my opinion the subsequent words are just as clear and decisive as the words giving the estate. In paragraphs " Third " and " Fourth " two absolute bequests are made of $5,000 each to the respective legatees. If testator had intended an absolute gift of the articles mentioned in paragraph " Sixth," it would have been a simple matter for him to have

done so. It is also true that the testator in paragraph " Seventh " created a valid trust for Mrs. Higgins during her life with remainder to her daughter. Because of this, her counsel suggests that it is apparent that testator knew how to create a valid trust for Mrs. Higgins; that as testator did not use such definite language in paragraph " Sixth," it indicates that no trust in the latter paragraph was intended. With this opinion I cannot agree. The expressed intent of the testator in paragraph " Sixth " negatives any idea of a desire that Mrs. Higgins should have the articles therein mentioned for her own personal use. I do not think that this rule of construction is applicable in this case. The paragraph in question consists of one sentence, and no part of it is separated by so much as a comma. It would be a strained rule of construction that would permit the severance of a single sentence, in order to spell out an absolute gift, without regard to the language following the words of the gift, when, as in this case, it is necessary to read such subsequent words to ascertain the expressed intention of the testator. A period after the word " jewelry " and the omission of the remainder of the sentence would have accomplished such a purpose. But the gift therein mentioned was " to be distributed " as the legatee " understood they were to be distributed by my wife." Applying the rule of construction that it is the expressed intention of the testator that must prevail, it would seem clear that testator had some reason to believe that an understanding existed between his wife and Mae Taylor Higgins as to the persons whom Mrs. Billings desired should have her dresses and jewelry. Who those persons were, we have no way of ascertaining. Certain it is that they were not to be chosen in the discretion of Mrs. Higgins. I interpret the expressed intention of the testator as being a direction to Mrs. Higgins to distribute the dresses and jewelry to those persons whom the testator believed had been designated by his wife to Mrs. Higgins. This language clearly indicates an attempt to create a trust. The beneficiaries are not named, nor are they capable of being ascertained. An essential element for the creation of a valid trust is absent, and for this reason the attempted trust is void. (*Reynolds* v. *Reynolds*, 224 N. Y. 429; *Gross* v. *Moore*, 68 Hun, 412; affd., on opinion below, 141 N. Y. 559; *Matter of Keenan*, 107 App. Div. 234; *Matter of Philbrick*, 74 Misc. 327; *Matter of Hendrickson*, 106 id. 704; *Matter of Schaaf*, 120 id. 292; *Matter of Megrue*, 135 id. 16.)

In *Matter of Megrue* (135 Misc. 16) the language of the paragraph in question read as follows: " I give and bequeath all of the residue of my jewelry, clothing and personal and household effects not hereinbefore disposed of, to my executors hereinafter named, to

be distributed or disposed of by them in such manner as they in their sole discretion shall deem best. It is my wish and desire that my said executors follow out as near as possible the special instructions contained in a letter which I shall deliver to them before my death."

Surrogate FOLEY held that this gift, above mentioned, was beneficial rather than fiduciary, not only because of its language, but by reason of other parts of the will, stating at page 17 of the opinion as follows: " In the will involved here the essential element which characterizes the gift as absolute is the language ' to be distributed or disposed of by them in such manner as they in their sole discretion shall deem best.' The power of distribution alone may have indicated an executorial function, but the alternative power of disposal contained in the clause imposed an absolute vesting. * * * Similarly here the sole discretion granted in the first sentence of the paragraph and the precatory language of the second sentence negative any purpose to create a trust."

The above case differs materially from the case in question. In the above case the executors had power to *distribute* and *dispose* of the property as they in *their sole discretion* deemed best. No such power of disposal and no such discretion was given Mrs. Higgins. Also, in the present case, no such precatory language was used as in the above-mentioned case. For these reasons, I believe the above case is clearly distinguishable from the present one.

No valid disposition having been made of the property mentioned in paragraph " Sixth," the testator must be deemed to have died intestate as to it and the same passes to the residuary legatees.

Should interest on the trust funds mentioned in paragraphs " Second," " Fifth," " Seventh " and " Eighth " be allowed from the date of decedent's death and if so, at what rate?

Decedent died October 30, 1928. His wife, Florence Emery Billings, predeceased him on August 21, 1928. Decedent was the sole beneficiary and sole executor under her will, probated October 8, 1928. Upon Mr. Billings' death, the Merchants National Bank of Plattsburgh, N. Y. was duly appointed administrator c. t. a. of Mrs. Billings' estate. The inventory filed in her estate shows personalty of the appraised value of $880,358.68 and realty of the appraised value of $36,000, making her gross estate $916,358.68. All of this property so inventoried, except for some expenses of administration of her estate prior to decedent's death, was later included in the inventory of decedent's estate, which shows a gross estate of $954,003.62. Of this amount the only real estate was the same real estate as was listed in the inventory of Mrs. Billings' estate. It would, therefore, appear that except for the amount

which Mr. Billings received from the estate of his wife, his own estate amounted to $37,644.94, this sum representing the difference between decedent's gross estate and that of his wife. It also appears from Schedule " C " in the final account of Mrs. Billings' estate that there was turned over to the executor of Mr. Billings' estate on January 10, 1930, the date of the final decree in Mrs. Billings' estate, the sum of $432,746.87 in securities inventoried in Mrs. Billings' estate. It should be noted that the total amount required for the trust funds under decedent's will is $410,000. The securities thus retained by Mrs. Billings' estate and turned over by her representative in kind to the executor of Mr. Billings' estate were, therefore, more than sufficient to provide funds necessary to set up all of the trust funds created by decedent's will. Publication of notice to the creditors in Mrs. Billings' estate was completed April 15, 1929, and in Mr. Billings' estate on May 25, 1929. It was, therefore, possible on these respective dates for the representatives of these two estates to know the amount of claims filed against each estate and to ascertain in each case the approximate net estate.

There was paid by the representative of Mrs. Billings' estate the sum of $2,500, in cash, to Mr. Billings, and later at various times the sum of $137,500, in cash, to the executor of Mr. Billings' estate, as shown in Schedule " H " of the final account in Mrs. Billings' estate. Part of this latter amount was used by the executor of Mr. Billings' estate for payment of the transfer taxes due from the beneficiaries under Mr. Billings' will.

The rule seems now well established that the beneficiary of a trust fund is entitled to interest thereon from the date of death of the testator. The reason for this rule is that it is the income which constitutes the legacy, and that the right to the income does not depend upon the investment of the principal fund from which said income is to accrue. (*Matter of Stanfield,* 135 N. Y. 292.) (See, also, cases hereinafter cited on question of rate of interest to be allowed.) At page 297 of the opinion in the above case the court states as follows: " If the estate is sufficient for the liquidation of debts and other charges, and is so invested as to be productive of income from the death of the testator, a bequest of income to a legatee for life must be construed to invest him with a title to such income from the date of the testator's demise, unless there is some provision in the will from which a contrary intent is to be inferred. The statutory time of payment of the income to the legatee is not affected by this construction. He must still wait, as the respondent did, until the expiration of one year from the grant of letters before payment of the income can be demanded,

but he is then entitled to his share of the net income which has previously accrued." The above case seems to be the leading authority upon this matter and has been cited with approval in the many cases dealing with this subject. In fact this rule does not seem to be disputed by the attorney for the petitioner herein. However, he endeavors to distinguish the present case by asserting that in the case at bar it was necessary for the estate of Mrs. Billings to be settled before the securities in her estate could be transferred to the estate of Mr. Billings; that this in effect required a conversion of such securities; that a reasonable time was necessary to accomplish this purpose, and that the time actually used in settling Mrs. Billings' estate was such a reasonable time, because until a final accounting was had in Mrs. Billings' estate, it could not be known whether her estate was sufficient to set up the trusts mentioned in Mr. Billings' will. The facts in connection with the history of both estates as heretofore mentioned would not seem to provide the basis for such a theory. The greater part of Mrs. Billings' estate consisted of income-producing securities. There were ample funds in excess of the amount required for the payment of her debts and expenses of administration to set up the trust funds created by Mr. Billings' will. All claims against both estates were known within approximately six months from their respective deaths. Upon the decease of Mrs. Billings, Mr. Billings became the sole owner of the property in her estate, subject only to the amount due her creditors and the expenses to be incurred for the administration of her estate. His right to dispose of this property by his will could not be challenged. There is no evidence to justify a belief by the representative of Mr. Billings' estate that the amount of claims against and expenses of administration of Mr. Billings' estate might be such as to make it impossible to set up all of the trust funds mentioned in his will. The same is true with reference to the representative of Mrs. Billings' estate. Both estates were handled by the attorney for the petitioner herein, so that it seems only logical to infer that at all times the representative in each estate could have ascertained that sufficient funds were available to set up the trust funds mentioned in Mr. Billings' will. There is nothing in decedent's will to indicate an intent that the enjoyment of the income on these respective trust funds should be postponed by the representative of his estate. In fact, his knowledge of the nature of the securities which he had received from Mrs. Billings' estate prior to the execution of his will would clearly indicate that he knew that the income bequeathed by him to the respective beneficiaries of the trust funds in his will would commence to accumulate forthwith from the date of his death. I do not believe

that the situation in this case with respect to the right of these beneficiaries to obtain interest on their trust funds from the date of testator's death is other than that which would obtain in a case where a representative of an estate was both an executor and trustee therein. In the latter case, it would hardly be maintained that the executor would be justified in waiting until the rendition of his final accounting as such executor before setting up the trust funds which he was to administer as trustee. In the present case, while we have distinct estates, they are the estates of a husband and wife living together and in which the bulk of the securities are identically the same in each estate. The amount of Mrs. Billings' estate was such that the representative of her estate could have very properly turned over to the representative of Mr. Billings' estate securities sufficient to establish the trust funds created under Mr. Billings' will. In fact, the sum of $137,500, in cash, was so turned over as shown in Schedule " H " in the final account in Mrs. Billings' estate. I am, therefore, of the opinion that interest on the trust funds herein mentioned should be allowed to the respective beneficiaries from the date of testator's death to the date when the transfer taxes due from the beneficiaries of said trust funds were paid, and on the balance of said trust funds after deducting the amount of such transfer taxes, to the date when said trust funds were set up.

What rate of interest should be allowed? There are a few cases where the beneficiary has been allowed only four per cent on the theory that the beneficiary was entitled to interest only at such rate as might have been reasonably earned thereon if the trust funds had been properly invested. (*Conklin* v. *Clark*, 48 Misc. 432; *Matter of Smith*, 86 id. 136; *Southgate* v. *Continental Trust Company*, 74 App. Div. 150; affd., on opinion below, 176 N. Y. 588; *Lawrence* v. *Littlefield*, 215 id. 561.) These cases are distinguishable from the present case in that in some of them the evidence indicated that the amount of income earned would not exceed four per cent, and in one at least that the estate consisted to some extent of unproductive realty, which had to be converted. The weight of authority, however, would seem to favor the allowance to the beneficiary of a trust fund of the actual income earned upon the securities in the estate from the time of the testator's death. (*Cooke* v. *Meeker*, 36 N. Y. 15; *Matter of Stanfield, supra; Matter of Dewey*, 153 N. Y. 63; *Matter of Slocum*, 60 App. Div. 438; mod. and affd., 169 N. Y. 153; *Matter of Kings County Trust Company*, 141 App. Div. 43; *Matter of Parkin*, 190 id. 875; *Matter of Carey*, 200 id. 344; *Matter of Ahrens*, 203 id. 30; *Matter of Brown*, 115 Misc. 710; *Matter of Hopkins*, 133 id. 554.) In view of the authority of these latter

cases, I believe that interest should be allowed on all of the trust funds mentioned in decedent's will, as above mentioned, at a rate equal to the amount actually earned by the income-producing securities in his estate. I am not able to state from the facts before me what this rate of interest should be. The inventory in Mrs. Billings' estate shows securities of the appraised value of $814,574.43. Schedule " B-2 " of the final account in her estate is entitled: " Interest and dividends received on securities and not yet set up in inventory." The items listed thereunder amount to $38,342.18 and include the period from September 4, 1928, to December 16, 1929, both dates inclusive. Counsel for petitioner deducts the sum of $8,711.26 for items listed therein between October 30, 1928, the date of Mr. Billings' death, and October 30, 1929, the period during which the allowance of interest on these trust funds is in question. This would indicate an apparent income during this period of $29,630.92, from which the rate of interest earned on the securities above mentioned is attempted to be determined. It is not clear to me that this method gives credit for accrued income during that period as well as income actually paid to the estate, for this reason: In Schedule " A-2 " of this final account are listed receipts for " Amounts of accrued interest and dividends declared prior to death." In this list are receipts from August 30, 1928, to August 1, 1929, although it would not seem probable that the dividends mentioned in the latter part of this period could have been declared prior to the death of Mrs. Billings, as it is not common practice to declare dividends payable so far in advance. I, therefore, suggest that the respective counsel, upon the settlement of this decision, furnish the court with the necessary information to show the actual earned income on the securities above mentioned from the date of Mr. Billings' death to the date when said trust funds were set up. The annual rate of interest on such securities will then be determined and allowed the beneficiaries, as above mentioned.

Counsel for the petitioner in determining the rate of interest earned on these securities deducts the sum of $3,918.83 for expenses incurred in foreclosing a mortgage. This expense is a charge on the residuary estate and should not be so deducted for such purpose.

Settle decision and prepare decree upon five days' notice.