MALCOM G. MCNAUGHTON and others, *appellants, vs.* JOHN MCNAUGHTON, executor &c., and others, *respondents.*

Under the provisions of the revised statutes a will, whether it disposes of real or of personal property, speaks as of the time of the testator's death.

Where a testator devises all his real estate, in express and unambiguous words, he will be deemed to have reference to the real estate as it shall exist at the time of his death.

G., being the owner of a farm, and certain personal property, made his will, giving and bequeathing to his wife all his personal estate. He then gave, devised and bequeathed to his wife " all his real estate " during her life, remainder over to others. He subsequently sold and conveyed the farm to L., taking back from the grantee a bond and mortgage for a part of the purchase money, which he held at the time of his death. *Held* that the bond and mortgage passed to the widow of the testator, as part of the person-

McNaughton *v.* McNaughton.

alty; it being the intent of the testator that the devise should operate only on the real estate of which he should die seised.

*Held, also,* that if the devise were to be regarded as a devise of the farm—in effect a specific devise—then the sale and conveyance was, to that extent, a revocation of the will.

APPEAL from a decree of the surrogate of Washington county, made upon the accounting of the executor of Isaac Getty, deceased. The facts are sufficiently set forth in the opinion of the court.

*James S. Coon* and *C. F. Ingalls,* for the appellants.

*M. Fairchild,* for the respondent.

*By the Court,* BOCKES, J. This is an appeal from an order and decree of the surrogate of Washington county.

On the 27th January, 1842, Isaac Getty made a last will and testament by which he gave to his wife, Jane Getty, all his personal estate, to be for her use and at her disposal. He also gave and devised all his real estate to his wife during her natural life; and on her decease he directed his real estate to be sold and the avails divided among his nephews and nieces. He appointed M. McNaughton, the respondent, executor, to whom letters testamentary were issued on his decease.

When the will was made, (1842,) the testator owned a farm which, on the 7th of April, 1855, he conveyed away, taking back from the grantee a bond and mortgage for $2800, part of the consideration of the conveyance.

At the time of his decease, which occurred about the month of February, 1856, he held this bond and mortgage, with some other personal property, but no real property except a village lot.

On an accounting before the surrogate, that officer held that the bond and mortgage belonged to the personal estate, and passed under the will to the testator's widow, and entered an order and decree to that effect. From this order and

McNaughton *v.* McNaughton.

decree the nephews and nieces of the testator appealed, and demand its reversal.

The intention of the testator is the first point of inquiry, when called on to give construction to a will: and when the intention is determined, it must be carried out if consistent with the rules of law. In this case the will is in no respect ambiguous. It must therefore be taken to express the purpose of the testator, which must be collected from its plain and unequivocal terms. It must, too, be deemed to express his will and purpose at the time of or immediately preceding his decease. So it is said that a will speaks at the time of the testator's death, until which time it is ambulatory. A will of personal property was, by the common law, deemed to take effect on the death of the testator, and operated on whatever personal estate he then had : but a devise of real property operated on such only as the testator had at the time of the execution of the instrument. A devise of lands was supposed to resemble a conveyance, and was therefore held to operate only on such real estate as the testator had at the time of making the will. But this rule of construction of wills of real estate has been changed by statute, both in England and in this country. Our statute now ordains that " Every will that shall be made by a testator in express terms of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death. (2 *R. S.* 57, § 5.) Chancellor Walworth, in speaking of this statute, remarks : " This statutory provision proceeds on the ground that in a general devise of all his real estate, the testator had reference to the real estate as it shall exist at the time of his death ; and that such a construction of the testamentary disposition of his property will be but carrying his intention into effect.". (*Pond* v. *Bergh*, 10 *Paige*, 140, 149.) Judge Cowen says, in *Van Cortlandt* v. *Kip*, (1 *Hill*, 590, *on page* 596,) " the section cited does indeed declare that a devise in any form denoting an intent

to pass all a man's real estate shall now be construed to pass all the real estate devisable by him at the time of his death. In this respect it speaks at the same time as a will of personalty." So Judge Brown, in *Ellison* v. *Miller*, (11 *Barb.* 332, 334–5,) when alluding to the difference of construction formerly existing between a will of personalty and a devise of real estate, says: " the present statute has however taken away this distinction, and it gives to words which denote the testator's intention to devise all his real property the same effect as is given to words of similar import in respect to personal property." In *Brown* v. *Brown*, (16 *Barb.* 569–574,) Judge Allen says : " the section just quoted does away with all distinction between real and personal estate, and the intent of the testator governs in both cases ;" and he held that the will spoke at the decease of the testator in regard to the real estate devised by it. Judge Willard remarks, (*Willard on Executors*, 58,) " A will of personal property speaks from the death of the testator ; a devise of real estate formerly spoke from the date of the devise. But now by statute both speak from the same point of time, the death of the testator."

The will is clear and specific in its language. It must therefore receive construction according to the fair import of its terms. The testator devises all his real estate in express and unambiguous words. In such a case Chancellor Walworth says, the testator must be deemed to have reference to the real estate as it shall exist at the time of his death. He must be considered as knowing the law, and his plain words must have their appropriate signification.

Allowing the will to speak as of the time of the decease of the testator, as well in regard to his real as his personal estate, there can be no question but that the bond and mortgage passed to Mrs. Getty, as part of the personalty.

It is urged that the will in effect was as a bequest of money ; that it operated as an equitable conversion of the land into money or personalty. But if the will did not take effect until the decease of the testator, as we have seen it did not, then

it did not operate on the lands which had been previously conveyed by him. As to such lands the case was the same as if he had never owned them.

Nor need we here discuss the question of revocation. As we construe the will, it was the intent of the testator, as in the will expressed, that the devise should operate only on the real estate of which he should die seised.

It seems very plain, however, that if the devise is to be regarded as a devise of the farm—in effect a *specific devise*—then the sale and conveyance was to that extent a revocation of the will. (7 *Paige*, 97. 26 *Barb.* 416. 9 *id.* 35. 16 *id.* 569. 7 *id.* 174. 2 *Bradf.* 413.)

The order and decree of the surrogate must be affirmed, with costs.

[SCHENECTADY GENERAL TERM, January 5, 1864. *Potter, Bockes* and *James*, Justices.]