THOMAS H. RODMAN, as Executor and Trustee, etc., Appellant, *v.* CHARLES FINCKE et al., Executors, etc., Respondents, THOMAS H. RODMAN, Jr., et al., Appellants.

The will of M. devised certain real estate to trustees, in trust, to sell and convert into money, to invest the proceeds, divided into equal thirds, for the benefit of three grandchildren named, and to apply the income to the use of such grandchildren, respectively, during life, with remainder to their respective heirs, the trustees being vested with a discretion as to the time and manner of sale. By a codicil, it was provided that, in case the proceeds of so much of the lands devised as remained unsold at the testator's death should not amount to $30,000, there should be added thereto, out of the testator's residuary estate, sufficient to make up that sum. The testator died in 1860. A part of the lands devised was sold in 1869 for $2,000, and the balance in 1874 for $10,000. The testator left a large residuary estate, real and personal. In an action for a construction of the will, *held*, that the beneficiaries were not entitled to arrears of interest on the whole fund of $30,000; that the effect of the codicil was to leave the devise of the land, or so much thereof as should remain unsold, undisturbed, and, so far as the land was concerned, the beneficiaries were simply entitled to have the proceeds, when realized, invested for their benefit, and to receive the income therefrom; but that said beneficiaries were entitled to interest on the sum required to make up the deficiency from the time of the testator's death.

(Argued November 28, 1877; decided January 30, 1877.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department affirming a judgment entered, upon a decision of the court at Special Term.

This action was brought by plaintiff as one of the executors of the will of Abijah Mann, Jr., against his co-executors and the legatees and devisees under the will, to procure a construction of its provisions and those of a codicil annexed, and to obtain the direction of the court as to certain matters in dispute concerning the same.

The will was executed on the 30th of September, 1865, and contained, besides many other devises and bequests, the following :

"*Item.* I give and devise to my sons-in-law, Thomas H. Rodman and Charles Fincke, and my daughter Anna N. Fincke, the blocks of ground which I purchased from Daniel Richards, situated at Red Hook, so-called, in the city of Brooklyn, in trust, to sell the same and convert the same into money, at such time and in such manner as my said executors and executrix may, in their discretion, deem expedient, and to divide such proceeds into three several equal portions, and to invest in the public securities of the United States, or one of the said States, one of said portions, for the use and benefit of my grandchild, Thomas H. Rodman, Jr., for his life ; one portion in the like manner, to be invested for the use and benefit of my grandchild, Mary W. Rodman, for her life; and the third portion in like manner, to be invested for the use and benefit of my grandchild, William Dudley Rodman, for his life ; and to apply the income and profits of each portion so invested, or to be invested as aforesaid, to the use of each of my said grandchildren for whom such portion is or is intended to be so invested, for their respective lives; and on their respective deaths, either before or after my decease, to pay over such respective portions so invested or intended to be invested, to the respective heirs of my said three grandchildren."

By a codicil executed on the 30th of January, 1867, the testator thus modified the foregoing provision :

" Whereas, I have, by my said will, given and devised two blocks of ground, situated in the Twelfth ward of the city of Brooklyn, which I purchased from Daniel Richards, in trust, for the use of my grandchildren, Thomas H. Rodman, Jr., Mary W. Rodman, and William Dudley Rodman, for life. with remainders, as in said will provided, I now, instead of said two blocks of ground, hereby give, devise, and bequeath to the said trustees thereof in said will named, only the portions and lots embraced in said two blocks now unsold, or which may remain unsold at my decease, and the proceeds thereof, to the said trustees, Charles Fincke, Thomas H. Rodman, and Anna N. Fincke, in trust, to sell and convert the same into money at such time and in such manner as they may, in their discretion, deem expedient; and, in case such proceeds shall not amount to $30,000, then there shall be added to such proceeds a sum of money, out of the other portions of my estate, sufficient to make such proceeds equal to the sum of $30,000 ; and to divide such proceeds into three equal separate portions, and to hold the same upon the trusts in said will, in that respect declared, for said grandchildren during their respective lives, and on the death of either of them, leaving lawful issue, I give and bequeath the share of such deceased grandchildren to such issue absolutely, and for want of issue, to his or her surviving brothers or sister equally, and to their heirs at law."

By the will and codicil, the residuary estate was directed to be divided into eight shares, and was given to trustees to apply the rents, profits and income of one of said shares to the separate use of testator's daughter, Anna N. Fincke, for life, and at her death to pay the principal to her heirs. The other seven shares were likewise given in trust, to apply the rents, issues and profits of one share each to the separate use, for life, of testator's seven grandchildren, among whom are the appellants, Thomas H. Rodman, Jr., and his brother and sister, William Dudley and Mary W. Rodman (who are also the legatees named in the clauses of the will and codicil before recited ; and, on the death of any grandchild, the share whose

income is bequeathed for the use of such grandchildren, is given to his or her descendants, and for want of issue, to his or her brothers and sisters.

The testator died on the 6th of September, 1868, leaving, in excess of all debts and legacies, a large residuary estate, consisting of government securities, bonds, mortgages, stocks, and realty — the personalty alone of said residuary estate exceeding $200,000. The property at Red Hook, referred to in the will and codicil, remaining at the testator's death, consisted of thirty-five unimproved lots, two of which the trustees sold on the 1st of March, 1869, for $2,000, and the others on the 17th of November, 1874, for $10,000. After the first, but before the last sale, the executors brought an action in the Supreme Court, to which the parties were the same as to the present suit, to obtain a construction of the said provisions of the will and codicil, for the questions presented and determined in which see *Fincke* v. *Fincke* (53 N. Y., 528). This action was brought after all the lots were sold. It appeared that the executors, on the 1st day of January, 1875, made up the required sum of $30,000 by taking $18,000 from the residuary estate and adding it to the proceeds of the sale. The interest on the purchase-money up to that time was insufficient to pay the taxes on the lots. The court held that the executors were bound to make up the deficiency of the proceeds of the sale of the lots as of the said 1st day of January, 1875, and that the beneficiaries were only entitled to the income or interest as received by the trustees after that date.

*Joshua M. Van Cott* for the appellants.

*James Clark* for the respondents. The provision made for the Rodman defendants was a general, and not a specific, legacy. (2 Redf. on Wills, 457–460, 463–483; *Cogdell* v. *Cogdell*, 3 Des., 346, 373; *Dickin* v. *Edwards*, 2 Hare, 276; *Creed* v. *Creed*, 11 Cl. & F., 491, 510; *Marsh* v. *Wheeler*, 2 Ed. Ch., 156, 163. They were entitled to interest from the death of the testator. (*Bird's Estate*, 2 Pars. Select Cas. in

Eq., 172, 173 ; *Eyre* v. *Golding*, 5 Bin., 472 ; 2 Redf. on Wills, 475 ; 2 Rop. on Legacies, 1244 ; Prest. on Legacies, 281–292 ; *Hewitt* v. *Morris*, 1 T. & R., 241 ; O'Hara on Int. of Wills, 343 ; *Hilyard's Estate*, 5 W. & S., 30 ; *Cooke* v. *Meeker*, 36 N. Y., 15 ; *Gibson* v. *Bott*, 7 Ves., 89 ; *Williamson* v. *Williamson*, 6 Paige, 298 ; *Taylor* v. *Clark*, 1 Hare, 161.) The land was equitably converted into money from the time of his death. (*Hutchin* v. *Mannington*, 1 Ves., 366 ; *Walker* v. *Shore*, 19 id., 386 ; *Van Vechten* v. *Van Vechten*, 8 Paige, 104 ; *Moncrief* v. *Ross*, 50 N. Y., 431 ; *Manice* v. *Manice*, 43 id., 303 ; *Stagg* v. *Jackson*, 1 id., 206, 212 ; *Robinson* v. *Robinson*, 19 Beav., 494 ; *Arnold* v. *Gilbert*, 5 Barb., 190, 196 ; *Forsyth* v. *Rathbone*, 34 id., 338, 405 ; *Fincke* v. *Fincke*, 53 N. Y., 528.) Interest should be computed in favor of the Rodman defendants, at least one year from the testator's death. (*Cooke* v. *Meeker*, 36 N. Y., 31 ; *Williamson* v. *Williamson*, 6 Paige ; *La Terriere* v. *Bulmer*, 2 Sim., 18 ; *Pearson* v. *Pearson*, 1 S. & L., 10 ; *Varley* v. *Win*, 1 K. & J., 700.)

Rapallo, J. In the case of *Fincke* v. *Fincke* (53 N. Y., 528), we held that under the codicil now in question the beneficiaries were not entitled to any thing from the residuary estate, until by a sale of the land devised by the codicil, it should be ascertained that the proceeds did not amount to $30,000, and on that ground we reversed the judgment which gave them interest on that sum from the income of the residuary estate, from the time of the testator's death to the time of sale. The question whether, when the deficiency should be ascertained by a sale, interest should be allowed on such deficiency during the time the sale was delayed, was not decided, but was expressly reserved. (See opinion, p. 535.) That question is now distinctly presented. The sale has been made and the deficiency is ascertained. The appellants claim arrears of interest on the whole fund, but should that not be allowed they urge that they are entitled to interest on the amount necessary to make up the deficiency.

We are of opinion that the claim of interest on the whole

fund of $30,000 cannot be sustained. By the original devise contained in the will nothing was given except the two blocks of ground described. These blocks were devised to trustees, in trust to sell and convert them into money, and invest the proceeds for the benefit of the three grandchildren named, in equal thirds, and apply the income to the use of such grandchildren respectively, during their respective lives, with remainder to their heirs respectively, the trustees being vested with a discretion as to time and manner of sale.

Under this clause, it is clear that no claim could, under any circumstances, arise on behalf of the grandchildren, against the personal or residuary estate of the testator. It is true that as between tenant for life and remainder-men, the rule has been adopted that where a testator gives property to trustees with an absolute trust for conversion, and with a discretion as to the time at which the conversion shall take place, if from any cause whatever, arising from the discretion and judgment of the trustees, the conversion is delayed, then the tenant for life is not to be prejudiced by this delay, but is to have the same benefit as if the conversion had taken place within a reasonable time from the death of the testator, which is usually fixed at twelve months from that period. (*Yates* v. *Yates*, 28 Beavan, 637, 639 ; *Livingston* v. *Gray*, 2 Sim. & Stu., 396.) But that principle is inapplicable to the present case, the question not being between tenant for life and remainder-men.

The only change effected by the codicil was to provide that in case the proceeds of so much of the two blocks devised, as should remain unsold at the testator's death should not amount to $30,000, there should be added to such proceeds a sum of money out of the other portion of his estate sufficient to make such proceeds equal to the sum of $30,000.

This change appears by the codicil to have been occasioned in part, if not entirely, by the fact that after making the will the testator had sold part of the land devised, and contemplated that he might, before his death, make further sales.

We think that the effect of the codicil was to leave the devise of the land, or so much thereof as should remain,

standing as in the will, and so far as such land was concerned, the beneficiaries were entitled to have the proceeds, when realized, invested for their benefit, and are not entitled to claim from the personal or residuary estate any arrears of interest on the amount of the proceeds of the land. If the *cestuis que trust* for life have, by the delay in the sale, sustained any loss of interest on the proceeds, that is a matter between them and the trustees or remainder-men.

But by the codicil there was added to the devise of the land a bequest, payable out of the residuary estate, of a sum of money sufficient to make up the difference between the amount of the proceeds of sale of the land, and the sum of $30,000, and the amount of this deficiency having now been ascertained, the question is from what time it should draw interest.

Several circumstances must be taken into consideration in passing upon this question. It appears by the findings in the case that the residuary estate of the testator consisted of bonds and mortgages, government bonds, stocks and real estate, and produced a large income. So long as the sale of the land in question was delayed, the residuary estate enjoyed the benefit of the income of the sum necessary to make up the deficiency, and the beneficiaries under the trust were deprived of the same amount of income. This has been deemed a sufficient ground for allowing a legatee for life interest on a fund before it was gotten in and invested as directed in the will. (*Taylor* v. *Clarke*, 1 Hare, 161.) In the present case there is the additional circumstance that part of the land originally intended to be devised was converted during the life time of the testator, and the proceeds went to swell the residuary estate, which was productive of income, and the bequest now under consideration was intended to stand in the place of the land so converted. Furthermore, the proceeds of the lands, together with the sum necessary to make up the deficiency, were to be invested for the benefit of the three grandchildren, and they were to have the interest upon it during their lives. As to the land it may be said that so long as it remained unsold the rents stood in the place of the interest, but as to the sum

necessary to make up the deficiency, the grandchildren cannot be said to have received the income of that during their lives, if interest thereon does not commence until the precise amount is ascertained by a sale, which, in the present case, was postponed for upwards of eight years. In some cases where the amount of the fund cannot be ascertained till a period after the testator's death, but the bequest is of the interest on such fund during the life of the legatee, it has been held that to carry out the intention of the testator the legatee for life must be allowed interest on the fund as afterwards ascertained, to be computed from the death of the testator. (*Williamson* v. *Williamson*, 6 Paige, 298; *Gibson* v. *Bott*, 7 Ves., 89.) This rule is especially equitable when the fund has all the time been yielding income in the hands of the executors. (See *Hilyard's Estate*, 5 Watts & Serg., 30.)

For these reasons we think that the grandchildren are entitled to interest on the deficiency demonstrated by the sale, from the time of the death of the testator, and that the judgment of the General and Special Terms should be modified accordingly, without costs to either party in this court.

All concur.

Judgment accordingly.