BUTTON v. BUTTON et al.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

1. CONSTRUCTION OF WILLS.

Testator, after making certain specific bequests, devised his homestead to two sons, who were named as executors of the will, and directed the payment of incumbrances on it out of such property as was not specifically disposed of. The will required the executors to pay a certain legacy to other children of testator in case the property remaining undisposed of should be sufficient to pay the incumbrances on the homestead, and, if not sufficient, the amount of the deficiency should be deducted from the legacy. *Held*, that the right of the legatees to take under the will was not conditional on there being sufficient undisposed property to first pay the incumbrances on the homestead, but the provision was a direction to the executors to pay personally as devisees, less the amount of the deficiency, if any, in the property to meet the homestead incumbrances.

2. SAME.

Where testator devises his property to his children, an intent will be sought for which will give, as nearly as possible, equality of distribution among them.

Appeal from special term, Rensselaer county.

Suit for partition by Luther J. Button against Milton E. Button and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

The action is for partition, and, if partition cannot be had, for a sale and a division of the proceeds of the sale. The sole issue is upon the construction of a will. William P. Button died on the 16th day of November, 1897. At the time of his death he was the owner of two farms,—one called the "Homestead Farm," of about 100 acres, and which he valued, as the referee has found, at about $8,000; and the other a farm of about 60 acres, which, as the referee has found, he valued at between $5,000 and $6,000. At the time of the making of his will he had personal property to the value of about $1,350, and was owing about $350 of indebtedness. Thus conditioned, he made his will as follows: "I, William P. Button, being of sound and disposing mind and memory. do make, publish, and declare my last will and testament, as follows: First. I direct payment of all my debts, funeral and testamentary expenses. Second. I give and bequeath to my daughter Lottie Stiles the sum of two hundred dollars ($200), and make the same a charge upon all my estate. Third. I give and devise unto my sons Luther John Button and Myron R. Button the homestead farm whereon I am now located and now reside, situated in the town of Brunswick, containing about one hundred (100) acres of land, more or less, and being purchased by me of George Brust, equally as tenants in common. Fourth. I give and bequeath all the stock, wagons, harness, and farming utensils of said homestead farm at the time of my decease to my son Myron R. Button. Fifth. I direct the payment of the incumbrances upon said homestead farm out of such of my property as is not herein specifically devised and bequeathed, and which I empower my executors hereinafter named, or the survivor, to sell and con-

vert into money; thereby requiring my said executors to pay my daughters Ophelia Stannard, Lottie Stiles, and Milton E. Button, my son, the sum of three thousand five hundred dollars ($3,500.00), in equal proportions of one-third each, which is bequeathed to them in case the said property in this, the fifth clause of my will, shall be sufficient to pay the incumbrances on said farm; and, if not sufficient, the amount of the deficiency shall be deducted equally from each of the shares so bequeathed of the said three thousand five hundred dollars ($3,500), and deducted therefrom. And the said sum of three thousand five hundred dollars ($3,500), or such portion thereof as may be payable as herein stated, shall be paid within two years after my decease, without interest. Sixth. The remainder of my said estate I give, devise, and bequeath unto my daughters Ophelia Stannard and Lottie Stiles, and to my son Milton E. Button, in equal proportions. Seventh. In the case of the death of my daughter Ophelia Stannard before my decease, the share or sums so bequeathed to her shall be given to my other four children, provided she shall die without issue, and not otherwise. Eighth. I appoint my sons Myron R. Button and Luther John Button executors of this, my will, directing them to erect, with moneys belonging to my estate, a suitable headstone at my grave like the one at the grave of my wife in Cooksborough cemetery. In witness whereof I have hereunto set my hand and seal this 14th day of April, one thousand eight hundred and ninety-four, hereby revoking all former wills by me made."

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Lansing & Holmes, for appellants.
Foster, Kelly & Isenbergh, for respondent.

SMITH, J. The court below has held that the property mentioned in the fifth provision of the will must first pay the debts of the testator, next the $200 legacy, next the mortgages upon the home farm, which upon the 1st day of April, 1899, amounted to $4,300, and, unless such balance was sufficient to pay in full these claims, Milton E. Button and his sisters took nothing under the will. The appellant claims that, if such property should be just sufficient to pay the incumbrances upon the home farm, under that provision he and his sisters are entitled to a legacy of $3,500, which the executors must pay two years after the death of the testator. The claim of the appellant has, in my judgment, the better support. In the first place, it accords with the strict reading of the will. The executors of the will are Luther Button and Myron Button, to whom is devised this home farm. By the fifth provision of the will, these two sons, the executors, are directed to pay to the appellant and his two sisters the $3,500, upon the condition that the balance of the property is sufficient to pay the incumbrances upon said home farm. It is further provided that, if this balance of property is not sufficient to pay those incumbrances, then the $3,500 legacy should abate ratably. If the appellant's contention be unsound, why provide for an abatement, if the balance of the property be not sufficient to pay the incumbrances upon the home farm? If this be not the true construction, this provision is absolutely without significance. On the other hand, to support the respondent's contention requires a change in the provisions of this will. Respondent would read that the executors are to pay to the appellant and his sisters the $3,500 in case the balance of the property mentioned in the fifth provision shall

be sufficient to pay the incumbrances upon the home farm and the legacy. To authorize such an addition to the terms of the will requires very clear evidence of intent. This case is barren of such evidence.

First, consider the circumstances under which the will was made. The finding of the referee is to the effect that at the time of the making of the will, in addition to these two farms, the testator had about $1,350 in personal property, and that he was owing a debt of $350. If from $1,350 be deducted this $350 debt and this $200 legacy to Lottie Stiles, $800 only would remain; but this $800 includes the value of the horses, wagons, and farm utensils, which have been specifically bequeathed to Myron Button. We cannot assume, therefore, that more than $300 or $400 of personal property was in the mind of the testator as applicable in any way to satisfy this fifth provision in his will. Assuming the 60-acre farm to be worth $5,500, and the personal property available under the fifth clause of the will to be $500, only $1,700, at the most, would, upon respondent's theory, be available to pay this $3,500 legacy. These figures furnish no justification for a change in the provisions of the will.

Next, consider the will itself. This appellant and his two sisters, who are made the legatees by the fifth provision to the amount of $3,500, are also named as residuary legatees. If, as claimed by the respondent, it had been the intention of the testator that the balance of his property should first pay these incumbrances, and what was left thereof only should be divided among these three children, the complicated provisions of this fifth clause of his will would hardly have been chosen to express this simple purpose.

It is contended by the respondent that this legacy was not to be a charge in any event upon the homestead farm. But the executors, who are directed to pay this legacy, are the ones to whom the homestead farm is devised. This fact furnishes the key to the solution of the problem. The farm may not be charged with its payment, but these devisees are directed to pay the same. If this direction to the executors to pay be construed to be a direction to them to pay personally as devisees, the plan of the will becomes clear. If the property mentioned in the fifth paragraph of the will sells for just enough to pay the incumbrances, they must pay the full amount of the legacy. If, however, such property sells for less than enough to pay the incumbrances, they must pay the balance of the incumbrances, and may deduct the same from this $3,500 legacy.

By the provisions of the will, the executors are given two years in which to pay this legacy of $3,500. These mortgages were due at the time of the making of the testator's will. Demand of payment might at any time have been made thereon. It was not unnatural, therefore, that he should have provided that the balance of his property should first pay the mortgages, giving two years to his executors in which to pay this legacy.

A conclusive answer, however, to the respondent's contention lies in the rule of construction that an intent should be sought for which would give, as nearly as possible, equality of distribution among

children.. See In re France's Estate, 75 Pa. St. 220. Under the respondent's contention, Luther Button and Myron Button have $4,000 each, and this appellant and his two sisters, perchance, nothing. Under the contention of the appellant, Luther Button and Myron Button would have between $2,000 and $2,500 each, while the appellant and his two sisters would each have one-third of $3,500, with a possible decrease if the property mentioned in the fifth paragraph of the will be insufficient to pay the incumbrances on the home farm.

There is no indication in the will, and there is no evidence in the case, which would justify an inference that the testator, under any contingency, intended to disinherit this appellant or either of his sisters; nor is any reason apparent from the record why he should make a marked distinction between his sons Luther and Myron and his other three children. In fact, the seventh paragraph of the will seems to indicate a contrary purpose. With a presumed intention tending to an equality of distribution among his children, I think the appellant's contention should prevail.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur, except MERWIN, J., not voting.