LAWRENCE v. LITTLEFIELD et al.   (No. 6712.)

(Supreme Court, Appellate Division, First Department.   March 12, 1915.)

1. EXECUTORS AND ADMINISTRATORS ⬤⟹138—CONSTRUCTION OF WILL—POWER OF SALE.

Where a testatrix devised a share of her residuary estate, which consisted principally of unproductive real estate, to trustees for plaintiff for her life, with remainders over, and gave to her executors, who were the same individuals as the trustees, power to sell the real estate, or any part thereof, and to apply such portions of the proceeds as they deemed proper to the payment of taxes and assessments thereon, and to pay the surplus to the trustees, the power of sale was to be exercised by the executors as such, and was wholly discretionary with them, and the only right of the trustees was to the surplus from such sales as the executors might make.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560–566, 568–575; Dec. Dig. ⬤⟹138.]

2. WILLS ⬤⟹728—CONSTRUCTION—LEGATEE FOR LIFE—INCOME.

Whether the power of sale were discretionary or mandatory, the trustees could have no property to invest until they received the surplus of the sales from the executors, and consequently there would be no income

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for the legatee for life until the surplus from sales was paid to the trustees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1759–1780; Dec. Dig. ☜728.]

**3. WILLS ☜728—CONSTRUCTION—LEGATEE FOR LIFE—INCOME.**

The rule that where the income of a particular fund is bequeathed for life, or there is a bequest of a life estate in a residuary fund, the legatee is entitled to the income computed from the death of the testator, if the will evidences no contrary intent, is a rule of construction, and not of property, and does not apply where there is a devise of unproductive realty to trustees, with an absolute power to executors to convert, at their discretion as to time, and where the conversion has been justifiably delayed, and there has been a loss and not a profit during the delay.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1759–1780; Dec. Dig. ☜728.]

**4. JUDGMENT ☜713—CONCLUSIVENESS—CONSTRUCTION OF WILL.**

A judgment in an action to construe a will, in which all the legatees were parties, is conclusive in a subsequent action by a legatee for life to recover income computed from the death of testatrix.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. ☜713.]

**5. CONVERSION ☜16—EFFECT—DIRECTIONS IN WILL—INCOME.**

Where a will directed the sale of unproductive real property by the executors, at their discretion as to time, the doctrine of equitable conversion does not require the law to treat the estate as producing an income, where no income has been earned, and there is no right thereto, except under that doctrine.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 38–40, 42, 43; Dec. Dig. ☜16.]

Appeal from Special Term, New York County.

Action by Julia M. C. Lawrence against Charles E. Littlefield, as administrator with the will annexed of the estate of Mary G. Pinkney, deceased, and others. From orders (147 N. Y. Supp. 760) overruling the defendants' demurrers to the complaint, the defendants appeal. Reversed, and demurrers sustained.

The complaint set forth the following facts: Mary G. Pinkney died in December, 1908, leaving an estate consisting of personalty valued at about $700,000 and real estate valued at that time at about $8,000,000, nearly all of which was unimproved and unproductive, and has since suffered a continuous depreciation in value. By the eighth clause of her will, after making certain bequests of inconsiderable value, all of which have been paid, and certain devises of specific pieces of real property, she divided the residue of her real and personal estate into four parts, of which she gave absolutely to each of her nephews Thomas and Archibald one part. To her niece Grace she gave one-half of one part absolutely, and the remaining half to her executors in trust to pay the income thereof to Grace for life, with remainder over to the children of Grace. One part she gave to her executors in trust to invest and pay the income to the plaintiff (also a niece) for life, with remainder over to her children. By the ninth clause, in the event of the death of either of her nephews or nieces before the testatrix, leaving issue, the share of the one so dying was devised to such issue; but, in default of any such issue, the share of the deceased nephew or niece was to be divided equally among his or her surviving brothers and sisters, "the whole of such part or share as may then fall to" the plaintiff and one-half of that "then" falling to Grace to be held by the executors upon trusts as aforesaid, and the other half of Grace's share to be taken and enjoyed by her absolutely. The tenth clause was as follows: "I give unto my executors

* * * power and authority to sell, either at public or private sale, all my real estate or any part thereof upon such terms as in their judgment they shall deem proper and to execute proper conveyances thereof, and that they apply such portions of the proceeds as in their judgment they may deem proper to the payment of any taxes and assessments that may be liens upon said real estate or any part thereof, and to pay over the surplus that may not be required in their judgment for the above named purpose to the said" nephews and nieces "in the proportions hereinbefore mentioned" the whole of such part or share as may "*then*" fall to the plaintiff "to be held in trust by my executors as hereinbefore provided"; one-half of the share that may "*then*" fall to Grace to be similarly held in trust, and the other half to her absolutely.

Prior to the commencement of this action portions of the real estate were sold for approximately $2,660,000. The gross income from all the real estate to May 1, 1912, amounted to only about $101,000; whereas, the "carrying charges" alone amounted to over $315,000. The surviving executor, at various times between January and June, 1912, transferred to himself as plaintiff's trustee an aggregate of $775,000, no part of which was derived from income of the estate, and not until January, 1913, did plaintiff receive from the estate devised to her any income whatsoever. In November, 1912, after the death of the surviving executor, the defendants Lincoln Trust Company and Fischer were substituted as trustees of the trust created for plaintiff and her remaindermen. Prior to the commencement of this action the executors brought an action for the construction of the will, to which action this plaintiff was a party. By the judgment in that action it was determined that, for the purposes of the residuary clause, the effect of the will was to blend the real and personal property and to work an equitable conversion of the real estate into personalty. For relief, plaintiff prayed that the trustees be decreed to set apart from the moneys theretofore received by them, and as well from any moneys they might thereafter receive from the administrator c. t. a. representing proceeds of real estate thereafter sold, a sum or sums to be ascertained by computation and which shall be taken to represent the principal of the devise for plaintiff's use, which sums, with interest from the date of the death of the testatrix to the time when the several sums were or should be actually received, shall equal the sums so received, and that the difference or surplus be paid to plaintiff as and for income.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, SCOTT, and HOTCHKISS, JJ.

Henry A. Forster, of New York City, for appellant Louis H. Morris.

Abram I. Elkus, of New York City, for appellants Keith W. Morris and others.

Frederick H. Sanborn, of New York City, for respondent.

HOTCHKISS, J. [1] What, if any, relief plaintiff is entitled to depends upon the intent of the testatrix, to be gathered from the will itself. It must have been apparent to the testatrix that the real estate constituting the major portion of her estate could afford the plaintiff no income except from proceeds of sales. The devise of the share in which plaintiff is interested is direct to trustees, who were in fact identical with the individuals named as executors, although this identity was a coincidence of person merely, and not of estate. But inasmuch as an express power of sale was given to the executors as such, and not to them as trustees, I think it was evidently the intention of the testatrix that this power should be executed by the executors, although the time, terms, and circumstances of its execution were left wholly discretionary, as there are neither mandatory nor

directory words in the clause creating the power. Viewed in this light, the only right of the trustees was to receive for plaintiff's account such "surplus" as might remain after taxes and assessments had been paid. If the power to sell were to be construed to be an imperative power, to be executed at once as to all the real estate, there would be no force in the words which authorized the executors to "apply such portions of the proceeds as in their judgment they may deem proper to the payment of any taxes or assessments that may be liens upon said real estate or any part thereof, and to pay over the surplus which may not be required in their judgment for the above" purposes, because the sale of any real estate on which liens for taxes or assessments existed would necessarily require the payment of such liens from the purchase money. It is manifest, also, that the discretion with which the executors were vested permitted them to sell from time to time so much only as might at the utmost be necessary to pay the taxes and assessments on the whole, thus leaving no "surplus" for distribution. What the testatrix evidently intended was that the real estate devised to the trustees should be held by them as such, and that as executors they should from time to time, as to them seemed best, sell portions, and after paying the taxes and assessments on the whole, or on such parts as they deemed proper, they should pay over to themselves as trustees any remaining "surplus," the same to be held under the terms of the will.

[2] Until such sales were made, taxes paid, and "surplus," if any, paid over, there necessarily could be no income for plaintiff to enjoy. Nor can I see that any different result would be reached, should we construe the power of sale to be mandatory and immediate, for in that event as well all the trustees would have been entitled to receive was the "surplus" to which I have alluded, and until such surplus was obtained by the execution of the power there could be no income to which plaintiff would be entitled. If it be urged that the interpretation I put upon the will leaves the plaintiff at the mercy of the discretion of the executors and sacrifices her for the benefit of the remaindermen, I think a sufficient answer lies in the fact that in the event of any improper delay the plaintiff might have appealed to the court to direct the executor to execute the power. Although I do not think it necessary to resort to rules of construction to ascertain the intent of the testator in this instance, should we revoke such rules, they do not in my opinion aid this plaintiff.

[3] We may accept it as settled law in this state that where the income or interest of a particular fund is bequeathed to one for life (In re Stanfield, 135 N. Y. 292, 31 N. E. 1013), or where there is a clear bequest of a life estate in a residuary fund or some part thereof (In re Benson, 96 N. Y. 499, 511, 48 Am. Rep. 646), if the will evidences no different intent, the legatee for life is entitled to interest or to the income as afterwards ascertained, to be computed from the death of the testator. Necessarily the rule is not one of property, but one of construction, and its reason lies in the injustice of increasing the principal for the benefit of the remainderman, who would thus be given just so much more than existed at the time of the testator's death, and this at the expense of the life estate. Davison v.

Rake, 44 N. J. Eq. 506, 16 Atl. 227. The cases in which this rule has been successfully invoked are very numerous (in some states, as in Massachusetts, the matter seems to be the subject of a statute; see Ayer v. Ayer, 128 Mass. 575); but I think they are distinguishable from the present, and none of binding authority involved unproductive real estate. The cases may be roughly classified as involving productive real estate; gifts of productive personalty or of personalty easily susceptible of being made productive of an annuity or income; gifts to widows or in lieu of dower, or to infants, children of the testator, or such as toward whom he stood in loco parentis; where part of the estate consisted of wasting property, like leaseholds, or where mortgages or other investments of the trustees have been foreclosed or taken in, and a question arose as to the apportionment of the proceeds, which included a profit or something on account of income. That the principle is not a rule of thumb to be indiscriminately applied, and that even in the case of personalty it has regard for a situation where no income has in fact been earned or might reasonably be expected to be earned, is clearly shown by the authorities and appears in that portion of the opinion of the Chancellor in Williamson v. Williamson, where the distinction is pointed out between those instances where a life estate is constituted in a clear residuary fund and where "the testator had directed one species of property to be converted into another, or the residuary fund to be invested in a particular manner, and had then given a life estate in the fund as thus converted or invested." In the former class, having regard for actual income conditions in esse or in posse, the income awarded to the life estate is computed from the time of the death of the testator; whereas, because of the delay in securing income necessarily incident to the latter class, the computation is not made until "the conversion takes place or the investment is made," for which purpose one year from the date of the testator's death has been adopted as a convenient period from which the computation of income shall date. 6 Paige, 304, 305.

In Edwards v. Edwards, 183 Mass. 581, 67 N. E. 658, which is so greatly relied on by the respondent, there was a gift of all of testator's property direct to trustees, to pay the income, less certain specified sums, to testator's wife for life. The estate consisted of both unimproved real estate and personal property. The former, after a delay of some years, was sold at a large advance over its inventoried value, and the question before the court related solely to an apportionment of the proceeds between the widow and the remaindermen. A mere statement of the facts should be sufficient to show the material respects in which this case is different from the present.

The precise situation we have here is one which, so far as I can find, has never before been presented by any reported case in this state. It is one of a gift of personalty and unproductive real estate combined to trustees, with an absolute power in the executors to convert, accompanied by a discretion as to the time when such conversion is to take place, and where there has been no profit and the conversion has been justifiably delayed. In every case I have been able to find involving the interpretation of a testamentary devise of this character, where

the court has applied the rule adopted by the court below, there had been an increase in value, or the court was dealing with a species of property which lent itself to the presumption that the testator intended that the life tenant should participate in the enjoyment of the income which the subject of the devise produced or was capable of producing. If the rule invoked were applicable here, I take it that the fact that the express power to convert is given to the executors as such, and not to them as trustees, would not necessarily defeat its application, and inasmuch as the complaint is silent concerning any income from the personal property and asks for no relief in that regard, the fact that the estate is one of mixed real and personal property may also be disregarded, and that the case may be treated as a trust to convert unproductive real estate at the discretion of the trustees.

In Rodman v. Fincke, 68 N. Y. 239, unproductive real estate was involved. Referring to the principle applicable to gifts in trust to convert, with a life estate and remainder over, Rapallo, J., spoke of it as one which "has been adopted," implying, I presume, that it was applicable to the character of property there involved; but as the case was not one between life tenant and remaindermen, the learned judge said it was not applicable. As authority for the rule as he stated it, Judge Rapallo (68 N. Y., page 244) cited Yates v. Yates (1860) 28 Beavan, 637, 639, and Livingston (sic) v. Gray (1825) 2 Sim. & Stu. 396. Kilvington v. Gray involved personal property in certain of which the testator created trusts, and also directed that his personalty be converted into land as soon as convenient, and in the meantime the uninvested estate was to be invested in public stocks to be held upon certain trusts. It proving impossible to make the conversion, the court held that the life tenant was entitled to the income after one year from the testator's death. I cannot regard Kilvington v. Gray as a case in point. In Searle v. Baker (1900) 2 Ch. Div. 829, 832, Kekewich, J., refused to follow Yates v. Yates, saying that it was at variance with the later cases. Searle v. Baker was followed by Warrington, J., in Wilson v. Oliver (1908) 2 Ch. 74, 80. In Searle v. Baker, the residuary estate, consisting of both real and personal property, was given to trustees for sale and conversion, the proceeds to be held in trust to pay the income to the testator's wife for life, with express power to postpone conversion so long during the wife's life as the trustees saw fit. The real estate was productive; but, no conversion having been made, the widow was held entitled to the rents and profits. In the course of his opinion, after referring to passages which he had already quoted in a former case from Jarman and Lewin, Judge Kekewich said (page 834):

"I thought at first that there was a little ambiguity in Lewin's statement (10th Ed., page 1161): 'If a testator direct his real estate to be sold, and the proceeds laid out and invested in trust for A. for life with remainders over, the tenant for life is entitled to the rents only of the estate from the testator's decease.' But now that I have threshed the matter out, I think that there is a good deal of truth in it; for in the case of real estate, if the estate produces nothing, the tenant for life can get nothing, whereas in the case of personalty he would get something upon the principle laid down in In re Earl of Chesterfield's Trusts," 24 Ch. Div. (1883) 643, a case similar in general principal to Williamson v. Williamson, supra.

[4] There is one feature of the complaint to which I have not yet alluded. I refer to the judgment in the action to construe the will. Whatever doubt may exist as to the soundness of the decision involved in that judgment, it must be accepted as the law of the case. Giving to this judgment the fullest effect to which it is entitled, it is not alleged in the complaint herein, nor could it properly be held, conceding that the trust to sell was mandatory, that the executors were not vested with a discretion both as to the time and the terms of sale. The opinion of Mr. Justice Bischoff clearly shows such to have been his view.

[5] The fact that this judgment determined that an equitable conversion was worked by the terms of the will does not affect the question of the plaintiff's right to the relief she seeks. The doctrine of equitable conversion has properly been characterized as both artificial and arbitrary and granting to it the fullest effect so far as devolution, succession, and other matters affecting title are concerned, I cannot see how it could be applied so as, by presumption of law, to produce income from an estate where no income has in fact been earned, or the right to income, save as it might arise from an application of the doctrine, been shown. See Hite v. Hite, 93 Ky. 257, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189.

The orders should be reversed, with $10 costs and disbursements, and the demurrers sustained, with $10 costs. All concur.