In the Matter of the Judicial Settlement of the Account of Proceedings of EMMA LOUISE HARDEN and Others, as Executors, etc., of JAMES HARDEN, Deceased.

EMMA LOUISE HARDEN, Individually and as Guardian of the Person and Estate of DOROTHEA HARDEN and Others, and Others, Appellants; FRANCIS A. HARDEN and Others, as Executors, etc., Respondents.

First Department, May 4, 1917.

Will — construction — when stock valued at par for purpose of distribution — construction tending to produce equality favored — income payable from death of testator — time of payment of general legacies — appeal by general guardian in litigation by special guardian unauthorized.

A testator, after directing that his residuary estate be divided into seven equal parts, gave one part to his widow, two parts to his trustees for his two daughters, one part to each of his two adult sons, and the remaining two parts to his trustees for his two infant sons, and then further directed that the shares of stock in a certain company which he might own at the time of his death be distributed by his executors in kind, in lieu of the proceeds of the same in money, in payment of the shares of his residuary estate, and further directed "that for the purposes of fixing the value and amount of my residuary estate in order to determine the amounts of the several shares into which I have directed the same to be divided, and making the distribution hereinbefore directed, that the said stock be considered and taken to be worth its par value, and shall be so distributed and received in lieu of a sum of money equivalent to its par value; it being my intention hereby that all the stock * * * shall be distributed by my executors in lieu of cash, in or towards the payment of the said shares herein given and bequeathed to my sons," naming them, " before applying any of said stock or the proceeds thereof towards the payment of the shares of my residuary estate herein given to my said wife or to be held in trust for the benefit of my said two daughters respectively."

*Held*, that the testator intended that the value of his residuary estate should be determined in gross before distribution, and that in so determining the value, the stock should all be estimated at par, and that the total should be divided by seven and each of the sons sevenths should be taken in stock.

lf a will is susceptible of two constructions, one of which will tend to inequality in the distribution of the estate between the children of the testator and the other will tend to produce equality, the latter construction is favored.

First Department, May, 1917.      [Vol. 177.

Income of legacies is payable from the time of the death of the testator, unless from the provisions of the will a contrary intent is to be inferred.

The statute forbidding the payment of general legacies until after advertisement for claims or of the lapse of a year from the issuance of letters, did not preclude the ascertainment of the amount of the net residuary estate or the distribution thereof until after a year from the issuance of letters.

The general rule that a will speaks as of the date of the testator's death and will be construed as operating according to the then existing conditions unless a contrary intent be thereby shown, applied.

Where infants are represented in a litigation by their special guardians, appeals by the general guardian are unauthorized and should be dismissed.

APPEAL by Emma Louise Harden, individually and as guardian, and others, from parts of a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 20th day of December, 1916, construing the will and settling the accounts of the executors herein.

*Gilbert D. Lamb*, for the appellants Emma Louise Harden and Mary Harden Fowler.

*Egerton L. Winthrop, Jr.*, special guardian, for the appellant Dorothea Harden.

*Sidney Harris*, special guardian, for the respondents Acheson Adair Harden and Ross Harden.

*Herbert J. Bickford*, for the respondent Francis A. Harden.

*John S. Sheppard, Jr.*, for the respondents, the executors and trustees.

LAUGHLIN, J.:

The testator directed that his residuary estate be divided into seven equal parts; and he gave one part to his widow, Emma Louise Harden, two parts to his trustees for his daughters Dorothea, an infant, and Mary, now Mary Harden Fowler, one part to each of his two sons, Francis Acheson and James, who are adults, and the remaining two parts to his trustees for his sons Acheson Adair and Ross, who are infants.

The infant daughter, Dorothea, appealed both by her special guardian and by her general guardian. The infant sons are

respondents, represented by their special guardian; but their mother as general guardian took an appeal in their behalf.

The principal question presented by the appellants relates to the construction of the will with respect to the distribution of 5,796 shares of the capital stock of the Acheson Harden Company, which the decedent owned. After directing by the 4th paragraph of the will the division of his residuary estate into seven equal parts, and devising the seven parts as already stated in the succeeding paragraphs, 5th to 11th inclusive, by the 12th paragraph he appointed his executors and trustees which appointment was modified by codicils. In the 12th paragraph, after appointing executors and trustees and providing for filling vacancies, he authorized his executors and trustees to sell his real estate; and authorized the executors to retain as investments any stock or securities which he might leave, and gave directions with respect to investments. After these provisions comes the final paragraph of the will, requiring construction, as follows: " It is also my will and I hereby direct, that the shares of stock of the Acheson Harden Company, which I may own at the time of my decease, be distributed by my said executors in kind in lieu of the proceeds of the same in money in payment if sufficient, or part payment if not sufficient of the shares of my residuary estate herein given and bequeathed to my sons Francis Acheson Harden and James Harden and the shares directed to be held in trust for the benefit of my sons Acheson Adair Harden and Ross Harden, an equal amount of said stock, however, to be distributed to each of said sons, and that said stock shall be so received by said sons Francis Acheson Harden and James Harden and the Trustees herein appointed of the said trusts for the benefit of my said sons Acheson Adair Harden and Ross Harden, and I further direct that for the purposes of fixing the value and amount of my residuary estate in order to determine the amounts of the several shares into which I have directed the same to be divided, and making the distribution hereinbefore directed, that the said stock be considered and taken to be worth its par value, and shall be so distributed and received in lieu of a sum of money equivalent to its par value; it

First Department, May, 1917. [Vol. 177.

being my intention hereby that all the stock which I may own in the Acheson Harden Company at the time of my decease shall be distributed by my executors in lieu of cash, in or towards the payment of the said shares herein given and bequeathed to my sons Francis Acheson Harden and James Harden and the shares directed to be held in trust by my executors and trustees for the benefit of my sons Acheson Adair Harden and Ross Harden, before applying any of said stock or the proceeds thereof towards the payment of the shares of my residuary estate herein given to my said wife or to be held in trust for the benefit of my said two daughters respectively."

This paragraph contains the only provisions relating to the manner in which the seven parts of the residuary estate are to be determined for distribution. It is perfectly clear that in determining the shares of the sons he intended that the capital stock of the Acheson Harden Company should be allotted to them at par to the extent necessary to make up their respective shares. The controversy arises over the fact that about two-thirds of the stock will suffice for the shares of the sons, and that the stock is worth considerably more than par. There was an appraisal with respect to the value of the stock both at the time of the testator's death and at the time of the accounting; and it appears thereby that at the time of his death it was worth $160 per share and had increased to $175 per share at the time of the accounting.

The question is whether the testator intended that all of the stock should be appraised at par for the purpose of distribution or only that part which goes to the sons. The surrogate ruled that the provisions of paragraph 12 herein quoted, with respect to the par value of the stock, relate only to that part of the stock bequeathed in kind to the four sons; and that the surplus stock, which inures to the benefit of the widow and two daughters, must be appraised at its value at the time of the distribution. This construction manifestly creates a very unequal division instead of approximate equality, which was evidently the intention of the testator. Of course, owing to the par value being fixed at the value chargeable to the sons there would have been inequality in any event if the market value was

either more or less than par; but in so far as that result was inevitable it is manifest that it was clearly intended by the testator, for the will shows that he intended that his sons should have the stock to the extent of their shares at a fixed price, and his purpose evidently was to have his sons remain in control of the business which he had founded, and which was represented by this stock. It is fairly to be inferred, in view of the declaration of paragraph 4, that he was endeavoring to divide his residuary estate equally; that he considered the stock intrinsically worth par, and that he anticipated that there might be no market by which its selling value could be ascertained; and, therefore, I think, he plainly intended that for the purposes of distribution it should be deemed worth par. That was a practical way of determining the value of the stock for the purposes of distribution in any event, and it is not apparent that there was or would be any other practical way unless the stock should have a recognized, quoted market value; for in the absence of a fixed market value it would be very difficult to determine the value without a sale thereof, and without knowing the price it would bring it would be impossible to ascertain the precise number of shares the sons were to take or that it would be necessary to sell in order to divide the residuary estate into seven parts as directed by the will. It is evident, therefore, I think, that the testator intended that the value of his residuary estate should be determined in gross before distribution; and in so determining the value this stock should all be estimated at par, and that the total should be divided by seven and each of the sons' sevenths should be taken in stock. This would bring about equality, at least, with respect to the division of the stock; and whether the widow and daughters elected to take stock, as they have, or to have their part of it sold is quite immaterial. Although this construction does not result in equality of distribution of the residuary estate between the widow and six children of the testator it tends to produce equality; and it is a general rule with respect to the construction of wills that if a will is susceptible of two constructions, one of which will tend to inequality in the distribution of the estate between the children of the testator, and

the other will tend to produce equality, the latter construction is favored. (*Deppen's Trustee* v. *Deppen*, 132 Ky. 755; *Rivenett* v. *Bourquin*, 53 Mich. 10; *Lassiter* v. *Wood*, 63 N. C. 360; *Mehard's Estate, Pyle's Appeal*, 5 Penn. Sup. Ct. 336; *Button* v. *Button*, 57 App. Div. 297; *Cornwall* v. *Hill*, 135 Ky. 641.) By the decree from which the appeal is taken the plain direction of the testator, contained in his will, was violated. It appears thereby that the residuary estate consisted of this stock and of other property of the value of $62,489.94. The decree, instead of providing that this stock should be included in the residuary estate on a par valuation, as directed in the will, provides that, since the actual value of the stock was $175 a share, its value should be computed on that basis, and its value was so computed, aggregating $1,014,300, which, added to the value of the other residuary property, produced a total, as the value of the residuary estate, of $1,076,789.94. Thereupon, evidently upon the theory that the sons were entitled to take their entire shares of the residuary estate in stock at a valuation of $100 per share, it was determined that the proportion of the residuary estate as thus figured which each son would take was one hundred and seventy-five one-thousandths and the proportion which the widow and each of the daughters would take was one hundred one-thousandths, which was correct on that theory, for thereby the sons were to take $175, owing to the fact that all of their shares were to be taken in stock, for each $100 that their mother and sisters would take. This, I think, was an erroneous basis, for in determining the value of the residuary estate the value of the stock should have been added at its par value to the value of the other residuary property.

The income arising from the residuary estate between the time of the death of the testator and the accounting aggregated $63,110.42, and that amount, less the payments therefrom directed and authorized by the decree, and any further income thereafter received by the executors prior to the distribution was directed, after deducting and retaining lawful commissions, to be divided and allotted between the widow and children in the same proportion, namely, seven-fortieths to each of the sons and four-fortieths to the widow and each of the

daughters. Of that income, $57,960 consisted of a ten per cent dividend declared and paid on the stock after the death of the testator; but the learned surrogate decided, and the correctness of his decision is not questioned on the appeal, and, therefore, need not be examined, that these were not specific legacies of the stock, and on that theory no distinction was made with respect to the source from which the income was derived; and full commissions were allowed the executors on the actual value of the stock, and the correctness of that decision is not questioned. The surrogate not only held that in determining the total amount and value of the residuary estate the stock should be taken, not at its par value, but at its actual value at the date of distribution which, as has been seen, was $175 per share. The learned counsel for appellants insists that if the actual instead of the par value is to be taken it should be the value at the time of the death of the testator, which would require a less amount of the stock at par to satisfy the interests of the sons than if the stock is figured at $175 per share in ascertaining the amount of the residuary estate to be divided into sevenths. In support of that contention it is argued that, at least in the circumstances of this particular case where some of the legacies are payable in specified stock, the interests of the beneficiaries are to be determined as of the time from which the will speaks and not as of the time of the division, which in the case at bar was some two years later; but the decision of the surrogate that these are general and not specific legacies and that the dividends do not follow the stock when finally divided, but go into a common fund constituting income to be divided in proportion to the respective shares, is not questioned. The appellants recognize that in the case at bar it was necessary to suspend the actual physical distribution of the residuary estate and payment of income thereon for a reasonable time to enable the executors to advertise for and to pay claims, and to determine the precise amount of the net residuary estate; but it is contended, nevertheless, that the respective interests passed immediately upon the death of the testator and that the same principle applies as is applicable to a mandatory power of sale by which an equitable conversion is deemed to have taken place at the time of the death of

First Department, May, 1917.          [Vol. 177.

the testator. (See *Lawrence* v. *Littlefield*, 215 N. Y. 561.) That this was clearly so with respect to the two daughters and two infant sons whose shares were left in trust with directions that the income be paid to them is established by the authorities holding that income is payable from the time of the death of the testator unless from the provisions of the will a contrary intent is to be inferred, even though the share upon which it is payable is not then determinable. (See *Matter of Stanfield*, 135 N. Y. 292; *Barrow* v. *Barrow*, 55 Hun, 503; *Matter of Kings County Trust Co.*, 141 App. Div. 43; *Williamson* v. *Williamson*, 6 Paige, 298; *Rodman* v. *Fincke*, 68 N. Y. 239; *Edwards* v. *Edwards*, 183 Mass. 581.) There is here no provision of the will either indicating any intent that those entitled to *income* on their respective shares should not receive it from the time the will became effective nor does the will contain any provision indicating that those entitled to legacies *in stock*, from which the income principally has been derived, should not share in the income accruing during the period intervening between the death of the testator or issuance of letters testamentary and the date of distribution. The learned special guardian for Dorothea Harden, appellant, contends in his main brief that even if it should be held that all of the capital stock should not be taken at its par value in determining the amount of the residuary estate, still, in any event, the income should be divided and distributed in seven equal parts; and in his reply brief he reiterates that claim, and then argues that income upon a share or fund given in trust belongs to the beneficiary from the date of the testator's death, and contends that on the theory of the decree as made by the surrogate the infants would be entitled to the income earned by their respective shares of the principal; but that the adults, who take their shares outright, would not, for the reason that their shares were not payable until one year after the issuance of letters testamentary, and he cites *Matter of McGowan* (124 N. Y. 526) and Schouler on Wills, Executors and Administrators (5th ed. § 1481) as authority therefor, and on that theory argues that the income accruing on the shares of the adult residuary legatees during the *year* following the granting of letters falls into the residuary estate and should be distributed

equally among the seven residuary legatees. In the final point in his reply brief, however, his only contention in this regard is that in the event that the court holds that his client is not entitled to one-seventh of the income earned by the entire residuary estate, then the court should adjudge that the income accruing on the shares of the adult residuary legatees during the year following the granting of letters should be distributed equally among the seven residuary legatees. The effect of his contention, as I understand it, is that if the infants *are not allowed* to share in the total amount of the income *equally* with the adults, then they advance the claim that they are entitled to the income on their respective shares, and to one-seventh of the income on the shares of the adults during the year following the issuance of letters. If that contention were sustained it is not clear that it could be determined from the record what income was derived from the shares of the adults during the year following the issuance of letters and if the point were insisted upon even in the event that we decide that each of the infants is entitled to one-seventh of the entire income — but it is not — it might require that the matter be remitted to the surrogate for further evidence. The learned counsel for the respondent Francis A. Harden contends that the same principle by which beneficiaries entitled to the income of a trust fund take such income from the date of the death of the testator applies here to the shares given absolutely, and that each should receive the income on his share, not as stock dividends, however, and that even that theory is unfavorable to the sons, who were entitled to the *stock* from which the principal income arose; and that " they might well have claimed that the measure of their income was the dividends which the executors had received on their stock, less a proportionate part of deductions from income."

In addition to the reasons already assigned for equal distribution of the income, on the assumption that the bequests of stock did not constitute specific legacies entitling those taking it to all dividends accruing or paid thereon subsequent to the death of the testator, it may be observed that the statute forbidding the payment of general legacies until after advertisement for claims or the lapse of a year from the issuance of let-

First Department, May, 1917.                [Vol. 177.

ters did not preclude the ascertainment of the amount of the net residuary estate or the distribution thereof until after a year from the issuance of letters, as has been suggested in behalf of one of the appellants (See Code Civ. Proc. § 2688), and the stock legacies not having been payable in money would not have drawn interest at any time. The general rule that a will speaks as of the date of the testator's death and will be construed as operating according to the then existing conditions unless a contrary intent be thereby shown (See *Fox* v. *Phelps*, 17 Wend. 393; *McNaughton* v. *McNaughton*, 41 Barb. 50; 40 Cyc. 1424), is, I think, applicable here. Therefore, if the infants are permitted to share equally with the adults that is quite as much as they, at least the daughters, to whom stock was not specifically given, are entitled to receive.

These views will require a revision of the decree substantially throughout.

The infants are represented in the litigation by their special guardians and, therefore, the appeals by the general guardian were unauthorized and should be dismissed, but without costs, since, in the one case there was an appeal by both the general and special guardian and the contentions made by each were the same, and in the other the appeal was taken by the mother as general guardian in connection with her own appeal and no argument was made in behalf of the infant appellants.

It follows that the provisions of the decree inconsistent with the views herein expressed. should be reversed, and that the decree should be modified accordingly, with costs to all parties separately appearing, payable out of the residuary estate.

CLARKE, P. J., SCOTT, SMITH and SHEARN, JJ., concurred.

Decree modified as indicated in opinion, and as modified affirmed, with costs to all parties separately appearing, payable out of the residuary estate. Order to be settled on notice.